## Commonwealth *v.* Gahagan, Appellant.

Argued March 8, 1937.

Before Keller, P. J., Cunning-
ham, Baldrige, Stadtfeld, Parker and James, JJ.

*Jacob Kossman,* for appellant.

*Earl Jay Gratz,* Assistant District Attorney, with
him *Charles F. Kelley,* District Attorney, for appellee.

Opinion by Stadtfeld, J., July 15, 1937:

Appellant was president and in active charge of
Ace Oil Corporation, a licensed dealer in liquid fuels,
transacting business in the City of Philadelphia. Ap-
pellant as president of said corporation was indicted
in the Court of Quarter Sessions of the County of Phila-

delphia, as of June Sessions, 1932, No. 723, charged with having made incomplete, false and fraudulent statements and returns of the number of gallons of liquid fuel purchased by said dealer corporation from sources within the State during the months of August, September and October, 1930, and January, 1931, a separate count being contained in said bill of indictment for each of said monthly returns.

Appellant was tried on June 19, 1935, before ALESSANDRONI, J., and a jury, and on June 20, 1935, a verdict of guilty was returned on all counts. On June 24, 1935, appellant filed motion and reasons for a new trial and motion in arrest of judgment, and on October 30, 1936, appellant's motions were overruled, and on the same day the court sentenced appellant to pay the costs of prosecution and undergo three months' imprisonment in the Philadelphia County Prison. From this judgment appellant filed the present appeal.

The Commonwealth's testimony established that the Ace Oil corporation was a dealer in liquid fuels and held a permit issued by the Department of Revenue of the Commonwealth of Pennsylvania; that appellant was president and in active charge of said corporate permittee; and that four returns, one for each of the months of August, September and October, 1930 and January, 1931, on the forms required by the Department of Revenue, signed and acknowledged before a notary public by appellant, were transmitted from the corporation's office in Philadelphia to the Department of Revenue at Harrisburg.

For the purpose of computing the tax at the rate of three cents per gallon required to be paid to the Commonwealth, the returns required the dealer to state the number of gallons purchased by the dealer from sources within the Commonwealth during the month for which the return was submitted. In answer to this particular question, the return for the month of Au-

gust, 1930, reported the total number of gallons purchased to be 55,512 gallons, whereas the Commonwealth's testimony established that the number of gallons actually purchased by the dealer during the month of August, 1930, from but two sources within the State, was 240,612. The amount reported as having been purchased in the return for September, 1930 was 57,220, whereas the Commonwealth's proofs show that 233,839 gallons were purchased during that month. Again, in the return for the month of October, 1930, the amount reported in the return as having been purchased from sources within the State was 70,623, whereas the amount actually purchased, according to the Commonwealth's testimony, was 194,223 gallons. In the return for the month of January, 1931, the dealer reported purchases of 90,805 gallons, whereas the amount actually purchased from but two sources within the State was 146,362 gallons.

Summarizing, the gallonage unreported was as follaws: August 1930, 185,100; September 1930, 176,619; October 1930, 123,600; and January 1931, 55,557 gallons; or a total for these four months of 540,876 gallons unaccounted for and on which no tax was paid.

At the conclusion of the commonwealth's case, the defense counsel admitted of record that the Ace Oil corporation purchased all of the gasoline testified to by the commonwealth's witnesses as having been purchased within the State, with the further admission that more than that quantity was purchased by the dealer from two or three companies concerning whose sales no testimony was given.

The commonwealth further established by the testimony of Evelyn Lerner, a former bookkeeper of the dealer corporation, that she prepared the returns in question and made the figures in the returns comply with the amount of tax desired to be paid and transmitted by appellant on behalf of the permittee. The in-

formation with regard to the amount of tax to be paid and returned was given to the bookkeeper by appellant in advance of her making up the return, and after the return was prepared it was submitted to appellant for his approval and signature. The witness testified that appellant did not tell her specifically to take the figures placed in the return, but accomplished the same result by telling her how much was to be paid in taxes; that she took only part of the total gallonage purchased during the month and did not return the full amount; that the figures contained in the returns had absolutely no relation at all to the actual amount of gasoline purchased from sources within the State during the month covered by the return.

When Miss Lerner, the bookkeeper, was recalled for further cross-examination by defense counsel on the second day of the trial, she was shown a book called the corporation's purchase book and asked if it did not contain totals agreeing with the amounts contained in the returns. She identified the entries in that book as having been made in her handwriting and stated that the totals were the amounts reported. On redirect examination, the witness stated that she alone kept the books; recorded all purchases, but could not account for the existence or whereabouts of other books that would contain the record of the purchases proved to have been made. The witness also admitted that the night before the trial she and the appellant spent two and a half hours together in appellant's apartment, although she insisted there was no conversation in regard to the case in which she had already been subpoenaed as a commonwealth's witness.

Appellant did not take the witness stand and presented no defense.

The assignments of error material for consideration, relate to the refusal of binding instructions in favor

of defendant, and overruling the motion in arrest of judgment.

Appellant contends that the commonwealth's proofs do not establish that appellant knew or should have known that the returns were false and incomplete, and that there is no evidence that appellant was charged with the duty of making those returns on behalf of the corporation of which he was president. On the question of responsibility and knowledge of appellant, the following questions put by the trial judge to the bookkeeper, who prepared the returns, and the answers to those questions, leave no doubt as to appellant's knowledge of the falsity of the returns: "By the court: Q. You took some figures from the ledger? A. That's right. Q. Those figures that you took from the ledger were not the total figures at the end of the month? A. That's right. Q. You took a part of the total? A. That's right. Q. Did you take those figures arbitrarily, or did you take some items and add them up? A. That's right. Q. Did you do that on your own responsibility, out of your own mind, or did you do it for another reason? A. I had to get those figures; I had charge of the books, and I had to get those figures myself in order to make a return from the amount of money that was being sent in. Mr. Gahagan didn't say—'Take this figure,' and, 'Take that figure;' *he only said—'Pay so much.'* ...... Q. Why did you pick them (the figures) out at random? A. Because I had to make those returns to compare with the amount of money that was being sent in to the State. Q. Where did you get the figures about the amount of money that was being sent to the State each month? A. I made those figures up myself. Q. How did you know how much money was going to be sent to the State each month? A. (Not answered.) Q. Is my question clear? A. Yes, very clear. Q. Then let us have the answer. **A.** *Mr. Gahagan told me how much money to send.*

Q. You mean the defendant told you how much money to send? A. Yes sir. Q. What did he have to do with the figures that went in the report? A. *I had to make those figures up to comply with the amount of money that was being sent."*

The foregoing excerpts from the testimony leave no doubt that the returns were incomplete, false and fraudulent and known to be such by the defendant appellant.

Appellant endeavors to escape responsibility by asserting that he was not the officer "charged with the duty of making such statement or return."

Section 8 of the Act of May 1, 1929, P. L. 1037, reads as follows: "Section 8. Any dealer or consumer who shall fail, neglect, or refuse to make the statement or returns, or pay the tax as herein prescribed, or who shall refuse to permit the department, or any agent appointed by it in writing, to examine the books or papers of any such dealer or consumer pertaining to the business made taxable by this act, or who makes any incomplete, false, or fraudulent statement or return hereunder, or who does, or who attempts to do, anything whatsoever to avoid a full disclosure of the amount of such business done or liquid fuels consumed, or to avoid the payment of the whole or any part of the tax due, shall be guilty of a misdemeanor, and, upon conviction, shall be sentenced to pay a fine of not less than one hundred dollars or more than one thousand dollars, *or, in the case of an individual or the officer or employe charged with the duty of making such statement or return for a person, firm, copartnership, association, or corporation,* to undergo imprisonment not exceeding six months or both. Such penalty shall be in addition to the penalty imposed by any other section of this act." (Italics supplied).

A similar question arose in the case of *Commonwealth v. Handler,* 19 D. & C. 296, a prosecution under the same Act of Assembly, in the court of Quarter Ses-

sions of Philadelphia County, against one Handler, president of National Speedway Refining Company, a corporation licensed as a dealer in liquid fuels, the defendant in that case having been charged with making six incomplete, false and fraudulent returns to the Department of Revenue. The returns in that case also understated the amount of gallons purchased by the corporation within the State during the respective months for which the returns were made. Upon conviction, the defendant Handler, as appellant in the instant case, contended that there was no duty upon him to make the returns, and sought to set aside the conviction. In an opinion by Lamberton, J., filed on June 30, 1933, overruling defendant Handler's motion for a new trial, the court said, at p. 298: "Defendant's first contention is that there was no duty upon him to make a return and consequently he cannot be convicted of making an incomplete, false, or fraudulent return. The act provides that all dealers shall make returns. The word 'dealer' includes corporations. The act does not state what officers of a corporation shall make its returns. Therefore, the corporation is 'charged' with the duty of making a return, but no officer thereof is charged with this duty. It may be conceded that defendant would not be guilty of a misdemeanor because he failed to make a return on behalf of the corporation of which he was president, although an individual dealer who failed to make such return would be guilty of a misdemeanor. However, defendant undertook to make these returns. He swore to their truth before a Notary Public. The Department of Revenue was supposed to rely thereon. Having himself assumed to make these returns on behalf of the corporation of which he was president, he brought himself within the terms of the act and is liable thereunder if the returns were incomplete, false, or fraudulent. In other words, since the act imposes no duty upon the president of a cor-

poration to make a return, defendant could not be punished for failure to make such return, but having himself undertaken to make the return he is criminally liable if the return is in violation of the statute."

We fully agree with the opinion in the case cited. Appellant, as the chief executive officer of the Ace Oil Corporation, having charge of its business, and having assumed the duty of making these returns, brought himself within the provisions of Section 8 of the Act of May 1, 1929, and the verdict of the jury is amply sustained by the evidence.

No court should lend its aid to defraud the Commonwealth by supporting an ingenious defense, such as here interposed by appellant.

See, also, *United States v. Giles,* 300 U. S. 42.

We quote therefrom as follows:

"The rule often announced, that criminal statutes must be strictly construed does not require that the words of an enactment be given their narrowest meaning, or that the law-maker's evident intent be disregarded. *United States v. Corbett,* 215 U. S. 233, ...... 'Congress was not seeking to punish the ignorant bookkeeper who copies items into the books as part of his daily task, but the officers who conceived and carried out the fraudulent scheme which the false entry was designed to conceal. It is wholly immaterial whether such officer acts through a pen or a clerk controlled by him." 'It seems to us that defendant is as fully responsible for any false entries which necessarily result from the presentation of these pieces of paper which he caused to be prepared as he would if he had given oral instructions in reference to them or had written them himself.' ...... The record leaves us in no doubt that the false entries on the ledger were the intended and necessary result of respondent's deliberate action in withholding the deposit tickets. Within the statute he made them."

The assignments of error are overruled and judgment affirmed, and it is ordered that the defendant appear in court at such time as he may there be called and that he be by that court committed until he have complied with his sentence or any part of it which had not been performed at the time his appeal was made a supersedeas.