## Commonwealth *v.* Woods, Appellant.

Argued May 4, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER, RHODES and HIRT, JJ.

*Arden D. Mook,* with him *George J. Barco,* for appellant.

*Herbert A. Mook,* District Attorney, for appellee.

OPINION BY BALDRIGE, J., July 1, 1939:

The indictment under which defendant was convicted charged that he was engaged as a dealer and salesman in securities on behalf of himself and Resthaven Memorial Park, Inc., without registering, in violation of the Securities Act of April 13, 1927, P. L. 273, §22 (70 PS §22).

The only proposition before us is the sufficiency of the evidence to support a conviction.

Section 2(c) of the Act (77 PS §2) defines "dealer" as follows: "The term 'dealer' shall include every person or entity, other than a salesman who engages in this State, either for all or part of his or its time, directly or through an agent, in selling, offering for sale or delivery, or soliciting subscriptions to, or orders for, or undertaking to dispose of, or to invite offers for, or inquiries about, or dealing in, any manner in any security or securities within this State, including securities issued by such entity ......"

Section 2(d) defines "salesman" as follows: "The term 'salesman' shall, except as provided in section four, include every person or company employed or appointed or authorized by a dealer to sell, offer for sale or delivery, or solicit subscriptions to or orders for, or dispose of inquiries about, or deal in any manner in, securities within this State, whether by direct act or through subagents."

Section 22, under which the indictment was evidently drawn, provides: "Any dealer, agent, salesman, principal, officer, or employe, who shall, within this State, sell, offer for sale or delivery, solicit subscriptions to or orders for, dispose of, invite offers for or inquiries about, or who shall deal in any manner in, any security or securities, without being registered as in this act provided, or who makes any false statement of fact in any statement or matter of information required by this act to be filed with the commission, or any advertisement, prospectus, letter, telegram, circular, or in any other document, containing an offer to sell or to dispose of, or in or by verbal or written solicitation to purchase, or in any commendatory matter concerning any securities, with intent to aid in the disposal or purchase of the same, or who makes any false statement or representation concerning any registration made under the provision of this act, or who is

guilty of any fraud or fraudulent practice, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be sentenced to pay a fine of not more than five thousand dollars ($5,000), or imprisonment for not more than two years, or both ......"

The Commonwealth's evidence showed that Lawrence S. Kemp was treasurer of Resthaven Memorial Park, Inc., a corporation formed for the purpose of developing and selling cemetery lots near the city of Erie. Woods, the defendant, was one of the incorporators and for a short time was secretary and vice-president. Concededly, neither Kemp nor Woods was registered as a dealer or as a salesman. Kemp, who had previously pleaded guilty to a similar charge, was the principal witness against Woods, his alleged accomplice.

On Saturday, August 10, 1937, the appellant suggested that he and Kemp call on Mr. and Mrs. Adrian McCoy, an aged couple living in Meadville, acquaintances of Woods who had knowledge that they held certain securities. These two men had a talk with the McCoys on that day concerning the buying of cemetery lots. The following Monday they returned to the McCoy home and explained more in detail their plan and advised their prospects to convert certain of their investments into cash and apply the proceeds to the purchase of cemetery lots. The McCoys sent their nurse, Mrs. Perry, to the bank to obtain bonds having a face value of $2,500, the exact worth of which was not known but estimated by Kemp and Woods to be $850. These bonds, together with a check for $150, were turned over to Kemp and Woods, with written direction in the form of a receipt and authorization to sell them through J. S. Bache and Company, a brokerage house in Erie. Woods took the securities to the brokers, who sold them and remitted a check representing the proceeds, in the sum of $566.26, to the order of Resthaven Memorial Park, Inc. Kemp, as treasurer, immediately transferred 30 per cent of this amount to the corpora-

tion's account, designated "Division of Sales," and gave the appellant a check for 15 per cent, or one-half the total commission of 30 per cent.

Kemp and Woods made five or six subsequent visits to the McCoys and eventually persuaded them to turn over other securities, consisting of 14 1/2 units of North American Bond Trust certificates and 100 Equity Corporation Preferred, under identical arrangements pertaining to the sale thereof and application of the proceeds. From this transaction the cemetery corporation received $4,482.88; Woods' commission amounted to $610, for which he received a check of the corporation, dated August 23, 1937, signed by Kemp as treasurer.

About a week later the brokers sent the cemetery corporation another check for $7,665.87, representing an additional sum to that shown by the original order of confirmation of the sale of these securities. Kemp and Woods, in their testimony, each claimed credit for the suggestion that they return to the McCoys all over $5,000 as that seemed an ample investment for them in cemetery lots, and each accused the other of proposing that the McCoys be kept strictly to their agreement and that the entire proceeds, amounting to over $11,000, be applied to the purchase of cemetery lots in Resthaven Memorial Park. In any event, none of the money was returned to the McCoys, and the sum of $2,299.76 was transferred to the corporation's "Division of sales," and Woods was paid an additional commission of $1,149.88 by check of the corporation on August 25, 1937.

It is not a matter of moment, as fraud is not alleged, that when these dealings were being had with the McCoys, Kemp had only an option to buy the land where the cemetery was to be located. No deed was actually received therefor until August 31, 1937, notwithstanding that on August 25th, 64 deeds for cemetery lots had been delivered to the McCoys.

In addition to the foregoing transactions there was

evidence that Woods had a list of names of other people who had investments, some of whom he solicited to sell their securities and apply the proceeds to the purchase of cemetery lots. In several instances he was successful and the securities were delivered to him, he disposed of them, cemetery lots were conveyed therefor, and he received his commissions. The proof clearly discloses that the intent of the defendant was to contact inexperienced people, readily imposed upon (it was conceded he avoided bankers and others with knowledge of business affairs), and induce them to sell their investments through him. The primary purpose of our Securities Act is to protect the investing public and to regulate the registration of stock and bond dealers and salesmen who are not only selling securities to the public, but also acting as agents in selling for the owners: *Com. v. Johnson*, 89 Pa. 439; *Bagley Co. Inc. v. Cameron*, 282 Pa. 84, 127 A. 311; *Commonwealth v. Freed*, 106 Pa. Superior Ct. 529, 162 A. 679; *Commonwealth v. Boyle*, 108 Pa. Superior Ct. 598, 165 A. 521.

Accepting the Commonwealth's evidence as true, it is plain that the transactions of the defendant fall within the intent and meaning of the broad words used in section 22. The jury was fully justified in believing that notwithstanding the law forbade the defendant, unregistered as a dealer or salesman, to "dispose of" or "deal in any manner in ...... securities," that is exactly what he was doing. He and Kemp induced the holders to turn securities over to them so that they might be sold by the brokers and when the scheme was consummated they pocketed large commissions.

We recognize that the criminal statutes, as contended by the appellant, must be strictly construed and cannot be enlarged by the courts beyond their plain intendment: *Commonwealth v. Baker*, 115 Pa. Superior Ct. 183, 186, 175 A. 438. But this principle is without application as the proof offered shows this case to be

within the language of the Securities Act. As stated by Mr. Justice McReynolds in *United States v. Giles,* 300 U. S. 41, 48, 57 S. Ct. 340, 81 L. ed. 493, 497: "The rule, often announced, that criminal statutes must be strictly construed, does not require that the words of an enactment be given their narrowest meaning or that the lawmaker's evident intent be disregarded. *United States v. Corbett,* 215 U. S. 233, 242, 54 L. ed. 173, 175, 30 S. Ct. 81." See *Commonwealth v. Gahagan,* 127 Pa. Superior Ct. 425, 193 A. 406.

The conclusion we have reached is in accord with Formal Opinion No. 254 of the Attorney General, filed May 27, 1938, holding that "vendors of whiskey certificates, in undertaking to dispose of, inviting inquiries about, or dealing in any manner with the securities of the public of Pennsylvania in order to provide cash for the payment of whiskey certificates, also known as warehouse receipts for distilled spirits in bond, are dealing in securities within the meaning of the Pennsylvania Securities Act and such dealers and their salesmen are obliged to register and comply with the provisions of the Act of April 13, 1927, P. L. 273, known as the Pennsylvania Securities Act."

We are all of the opinion that, under the evidence in this case, the acts of the defendant constituted a violation of section 22 of the Securities Act, and, therefore, we are not justified in disturbing the conviction at the hands of the jury.

Judgment is affirmed, and it is ordered that the appellant appear in the court below at such time as he may there be called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.