## Commonwealth v. Zellers

*Harold A. Scragg*, Deputy Attorney General, and *Allen Lesley*, for Commonwealth.

*Wade K. Newell*, for defendant.

DUMBAULD, P. J., October 3, 1944.—In a summary proceeding before Edward Breakwell, a justice of the peace in and for Washington Township, Fayette County, Pa., Thomas J. Zellers was convicted of violating section 1311 of the Act of May 28, 1937, P. L.

1053, as amended by section 4 of the Act of July 3, 1941, P. L. 267. He was fined $300 and costs.

From the judgment of the justice, he appealed to the court of quarter sessions. A hearing de novo in that tribunal was had on March 31, 1944.

The charging part of the information reads:

". . . The defendant aforesaid did then and there [on November 18, at Perryopolis] . . . operate a motor vehicle or permitted it to be operated within the township of Perry, in Perryopolis, County of Fayette and Commonwealth of Pennsylvania, within the jurisdiction of this court, as a motor carrier, without a certificate of public convenience or a contract carrier permit authorizing the services performed from the Pennsylvania Public Utility Commission, and which operation of a motor vehicle is contrary to Section 201b and/or 804 and 1311 of the Public Utility Law, enacted May 28, 1937, Pamphlet Law 1053 as amended."

The transcript discloses that, at a hearing before the justice as of December 17, 1943, defendant appeared in person, listened to the testimony of Commonwealth witnesses, was given opportunity to cross-examine such witnesses, and testified in his own behalf.

At the hearing de novo the Commonwealth and defendant alike produced testimony to the effect that this defendant had, on at least two earlier occasions, been convicted of a like offense before a magistrate and that he had paid two or more adjudicated penalties.

Thereupon he invoked the provision of section 1311 of the act, providing that any offense subsequent to a second conviction, by such person or corporation, shall constitute a misdemeanor and, upon conviction thereof, such person or corporation shall be sentenced to pay the costs of prosecution and a fine of not less than $100 nor more than $500, or undergo imprisonment not exceeding six months, or both, in the discretion of the court.

On this provision he bases a contention that the justice of the peace was without jurisdiction to summarily

try his case; that the only jurisdiction conferred upon the justice of the peace was to hold him under bail to the grand jury; and that consequently the court, on appeal, was likewise without jurisdiction to hear and determine his case without the process of information, indictment, and trial by jury.

The testimony before the presiding judge at the hearing de novo in the quarter sessions amply supports the finding of guilt. Our only question, therefore, would seem to be that of jurisdiction.

This is a novel question, apparently a case of first impression. The answer requires the determination of legislative intent from the language used in defining procedure in offenses "subsequent" to a second offense.

As indicated, defendant contends that the language used indicates an intention on the part of the legislative body to make such subsequent offense a misdemeanor triable only in the quarter sessions in the regular process of information, indictment, and trial by jury.

The Commonwealth contends that the language used indicates an intention on the part of the legislature only to prescribe a severer penalty for the same offense, repeated subsequent to such second violation.

As affecting these contentions, we quote the language of the enactment:

"Any person or corporation . . . shall, upon conviction of a first or second offense, *in a summary proceeding before any person having the power of a committing magistrate*, be sentenced to pay the costs of prosecution and a fine of not less than twenty-five dollars nor more than three hundred dollars; and any subsequent offense by such person or corporation *shall constitute a misdemeanor*, and, upon conviction thereof, such person or corporation shall be sentenced to pay the costs of prosecution and a fine of not less than one hundred dollars nor more than five hundred dollars, or undergo imprisonment not exceeding six months, or both, in the discretion of the court. . . ." (Italics supplied.)

The viewpoint of defendant is that the use of the word "misdemeanor" in defining an offense subsequent to the second conviction compels the conclusion that the legislature meant a misdemeanor triable only, after indictment by grand jury, by a petit jury in the court of quarter sessions.

It is insisted that the legislature intended to change the tribunal before which the third and subsequent offenses must be tried in the first instance. As indicated, the Commonwealth argues that the legislature intended merely to increase the gravity of the offense and enlarge the applicable penalty, leaving the jurisdiction to try, convict, and penalize where it was placed in the case of a first and second offense.

What is the legislative intent must be gathered from the language used and, when discovered, such intent is controlling. There can be no doubt of the constitutional right of the legislature to describe and define the offense charged, fix the penalty, and confer jurisdiction to try, either upon a magistrate, by summary proceeding, or in the quarter sessions by a jury trial, after indictment by a grand jury: Allen v. Commonwealth, 77 Pa. Superior Ct. 244.

We conclude that the use of the word "misdemeanor" in description of the offense, without specifically fixing any venue, does not in and of itself connote an indictable misdemeanor triable only by a petit jury. The word frequently is used in the creation or description of a petty offense to be tried before a subordinate magistrate: Allen v. Commonwealth, supra.

The offense created and defined by this act of assembly is a new offense unknown to the common law and nonexistent at the time of the adoption of the Constitution. The offense is of such a character as to be within the complete control of legislative authority as to the description of the offense, the venue for trial, and penalty to be imposed.

The various definitions found in the books and in the cases for the word "misdemeanor" show to our satisfac-

tion that it is a generic word of very wide significance and that there has been no universal adoption of a precise, definite, and exclusive meaning to be attached to it. The mere massing therefore of such general statements, especially when they are wrenched from the context in which they are used in an opinion, furnishes but little support for the contention that, by the use of the word "misdemeanor" in a statute we are considering, our legislature committed itself to the conclusion that it was creating an indictable offense. *We can find no legal magic in the use of the word "misdemeanor" to warrant a judicial declaration that, because of such use, there is a plainly-expressed legislative intent to make such offense triable only by a jury.*

Where it is not necessary for a court, in the course of an opinion on a given subject, to delimit with precision and accuracy the legal limitations of the class of offense that might be included under the word "misdemeanor", it is stretching the meaning of general expressions used to conclude from them that there is anything in the Constitution of Pennsylvania to so cripple the legislature in the performance of its functions that it may not use the word "misdemeanor" in as broad a sense as it may choose to use it: Allen v. Commonwealth, supra.

The words of Head, J., in summing up the conclusion of the entire matter are entirely appropriate (p. 250) :

"We are persuaded therefore, first, that the offense of which the defendant was convicted by the magistrate was not one indictable at common law, and therefore it was entirely competent for the legislature, in creating the offense, to determine the mode in which the guilt or innocence of one charged should be determined. *Second, the law of Pennsylvania does not attach to the legislative use of the word misdemeanor such a congealed and exclusive meaning that it may not include, if the legislature so wills, petty offenses that may prop-*

*erly be tried before a subordinate magistrate."* (Italics supplied.)

The learned judge of the Superior Court also observes (p. 248):

"Did the legislature, by the use of the word misdemeanor estop itself from making any declaration on the subject of procedure and irrevocably designate the new offense as one belonging to the class of offenses that could be tried only in the court of quarter sessions before a jury 'as heretofore'? We answer there is no provision in our Constitution; there is no statute in force; and there is no judicial utterance in Pennsylvania binding upon this Court to uphold the affirmative of the proposition. . . ."

This opinion discusses the case of Mountain v. Commonwealth, 68 Pa. Superior Ct. 100, in which Henderson, J., of that court, used this language (p. 103):

"When, therefore, the legislature declares an act a misdemeanor, it says in effect that such an act is an indictable offense. . . . But it is unnecessary to dispose of the case on this view of it."

It is therefore apparent that the decision of the court in Commonwealth v. Allen, supra, regards as dictum the language of Henderson, J., just quoted in Mountain v. Commonwealth.

We come, then, to a search for the actual legislative intent as disclosed by the words of the section under consideration.

There is first a description of the offense of transporting passengers without a certificate of public convenience or a permit as a contract carrier. This is an offense unknown to the common law and nonexistent at the time of the adoption of the present Constitution. It may be committed by an individual or by a corporation. It is an offense, malum prohibitum, created by the legislature.

The act prescribes what shall follow "upon conviction of a first or second offense in a summary proceeding before any person having the power of a

committing magistrate". Thus the kind of offense first established and described by the act is definitely fixed as cognizable before a justice of the peace, summarily, so long as it be a first or second offense.

"Any subsequent offense" by the same person is declared to "constitute a misdemeanor". The underlying acts to be committed by an individual or corporation, which constitute the offense, are in no way different between the second and subsequent offenses. The same conduct constitutes the third offense as is present in the first and the second offenses. No new element is introduced distinguishing a third offense from a first or second offense. True, the penalty is increased. Persistent and recurring violations incur a more severe penalty and their commission is called a misdemeanor. However, no word of the act of assembly indicates what tribunal shall try the misdemeanor. No language of the act specifically changes the venue from the magistrate to the jury. No declaration of the act specifically places the venue exclusively in the quarter sessions. Only the inclusion of the word "misdemeanor", the omission of reference to summary conviction before a magistrate, and the increased penalty differentiate the third from the first or second offense.

The word "conviction" is used as to all offenses. It is urged that we must infer that the "conviction" referred to as applying to subsequent offenses is intended to be conviction by a jury, after indictment. If the legislature intended to withdraw jurisdiction to try and convict, in subsequent offenses, from the magistrate and vest such jurisdiction exclusively in the quarter sessions and jury, may we not assume that it would have said so in plain language rather than to require that inference to be drawn from the use of the single word "misdemeanor"? The only jurisdictional tribunal mentioned in the act is the person having the power of a committing magistrate. No new jurisdiction is specifically conferred for the trial of "subsequent offenses". If jurisdiction is withdrawn from

subordinate magistrates and exclusively vested in the quarter sessions, that result must arise from inference in the use of the word "misdemeanor".

The use of the word "court" in the description of the penalty is not of compelling significance in disclosing legislative intent. That name may be used indiscriminately in application to subordinate jurisdictions as well as to courts of record.

Counsel have not cited, nor have we discovered any applicable adjudication of this exact question. Commonwealth v. Scott-Powell Dairies, 128 Pa. Superior Ct. 598, discusses a parallel provision of the Milk Control Act, where exactly the same defense was interposed. However, the facts in that case projected the question whether the offense adjudicated was a "second" or "subsequent" offense. There was an admitted first offense adjudicated in 1936. As of February 25, 1937, another violation was alleged. The Commonwealth elected to try a violation charged as of March 1, 1937. The jurisdiction of the magistrate and the quarter sessions on appeal was sustained because the appellate court regarded the litigated offense as a second offense.

The opinion by Rhodes, J., says (p. 603) :

". . . Since the offense involved in this appeal was committed on March 1, 1937, and therefore was the third offense in chronological sequence, appellant argues that a summary conviction was improper, and that the jurisdiction of the magistrate was confined to holding appellant in bail for action by the grand jury. This position is untenable. The 'Milk Control Board Law' does not require the commonwealth to prosecute an offender for violations thereof in the order of their commission. . . . We are of the opinion that the violation before us was treated correctly, as a second offense, by the court below."

Thus the decision of that case leaves unanswered the question that we have for determination. If this deliverance had been with reference to the offense of

February 25th, heard by the magistrate on the same day that he disposed of the March 1st violation, the decision would be controlling.

The Commonwealth contends that the failure of defendant to raise the question of "subsequent offenses" and to show, at the hearing before the justice of the peace, that there were two or more earlier convictions, constitutes a waiver of the right to press that contention in the hearing de novo in the quarter sessions. That is a correct view where only procedural irregularities are involved: Commonwealth v. Burall, 146 Pa. Superior Ct. 525.

But the lack of jurisdiction cannot be waived. That question may be projected at any point in the proceedings. The jurisdiction of the quarter sessions depends upon the jurisdiction of the magistrate whose judgment is the basis of the appeal: Commonwealth v. Burall, supra.

The statute in question is penal and is to be strictly construed. This does not mean, however, that it is to be given the narrowest meaning if such is directly contrary to the plain intention of the legislature: Commonwealth v. Bienkowski, 137 Pa. Superior Ct. 474; Commonwealth v. Woods, 136 Pa. Superior Ct. 326, 332; Commonwealth v. Burall, supra (p. 529).

We conclude that the simple statement that offenses defined by the act of assembly in question, subsequent to the second offense, constitute a misdemeanor, in an act of assembly creating an offense not known to the common law and nonexistent at the time of the adoption of the Constitution, in which the first and second offenses are specifically made subject to the jurisdiction of a subordinate magistrate, does not disclose a legislative intent that such subsequent offenses shall be triable exclusively by information, indictment, and by a petit jury in the court of quarter sessions. We hold that it does disclose an intent to make subsequent offenses triable in the same manner and by the same authority as the first and second offenses, and a pur-

pose of increasing the penalty for such subsequent offenses.

In the light of this conclusion, it would seem that the Act of April 26, 1929, P. L. 824, confers jurisdiction upon the justice of the peace. We quote:

"That in all cases in which an act of assembly defines an offense, and renders it punishable upon summary conviction, or summary proceeding, but without conferring jurisdiction thereof upon any court, either of record or not of record, jurisdiction is hereby conferred upon any magistrate, alderman, or justice of the peace within any county in which any such offense is committed, to hear and dispose of a prosecution and impose the penalties provided therefor, subject to the right of appeal as in other cases."

It follows, in either event, that the justice of the peace had jurisdiction of the offense charged, as did also the court of quarter sessions on appeal

It will, therefore, be adjudged, ordered, and decreed that defendant, Thomas J. Zellers, is guilty of the offense charged against him, as described in the transcript, namely, the violation of section 1311 of the Act of May 28, 1937, P. L. 1053, as amended by section 4 of the Act of July 3, 1941, P. L. 267, in transporting passengers for hire, without having obtained a certificate of public convenience or a contract carrier permit.

In view of all the circumstances of this case, the minimum fine fixed for the offense described as a misdemeanor, namely, $100, would constitute sufficient punishment.

### Order of Court

Now, October 3, 1944, upon and after consideration of the transcript of the justice of the peace and the testimony produced at the hearing de novo in the above-styled case, the court does adjudge defendant, Thomas J. Zellers, guilty of the offense charged in the information, namely, the violation of section 1311 of the Act of May 28, 1937, P. L. 1053, as amended by

section 4 of the Act of July 3, 1941, P. L. 267, in transporting for hire passengers without having obtained a certificate of public convenience or a contract carrier permit.

It is further adjudged, ordered, and decreed that defendant forfeit to the Commonwealth of Pennsylvania, for the use of the County of Fayette, the sum of $100, and that he pay the costs of suit.