Commonwealth *v.* Mason, Appellant.

310

Argued January 11, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Chas. W. Eaby,* with him *Chas. W. Eaby, Jr.,* for appellant.

*Daniel J. McCauley, Jr.,* Special Deputy Attorney General, with him *William C. Storb,* District Attorney, and *Frank F. Truscott,* Attorney General, for appellee.

OPINION BY MR. JUSTICE BELL, March 14, 1955:

Defendant was indicted for violating The Pennsylvania Securities Act of June 24, 1939, P. L. 748, 70 PS §31, et seq., as re-enacted and amended by the Act of July 10, 1941, P. L. 317, 70 PS §31, et seq. After waiving a jury trial he was tried and convicted and was sentenced to pay a fine of $200. and undergo imprisonment for a period of three months. The Superior Court affirmed the judgment of sentence of the lower Court and we allowed an appeal.

The pertinent section of the Securities Act, supra, is §22: "Any dealer or salesman who shall in this State, without being registered hereunder, . . . (b) engage in the business of inducing holders of securities to effect the sale thereof through a person registered hereunder *or otherwise, directly or indirectly,** in order to produce funds to pay for other investments sold by such dealer or by such salesman for a dealer, . . . shall be guilty of a misdemeanor . . . ."****

The testimony shows that the defendant called on Christian R. Martin, at his home in Lancaster County, three times during the early part of 1952. The evidence is meagre and does not disclose at whose instance these visits were made. During these visits to Martin's home, Martin, who was 77 years of age, endorsed and delivered to Mason the following securities: 40 shares of Consumers Power Company, 20 shares of Radio Corporation of America, 12 shares of Central Illinois Light Company, 420 shares of Allied Chemical Company, Inc., 600 shares of Utah-Idaho Sugar Company, 100 shares Kropp Forge Company. Defendant was never registered as a dealer or a salesman for any registered dealer with the Pennsylvania Securities Commission. Defendant gave Martin in return for his securities *leases* on 200 acres of land in San Miguel County, New Mexico. The original lease covering the New Mexico lands showed that the *annual rental* for 3,760 acres amounted to *10¢ an acre.* The securities turned over by Martin had a market value (calculated at the time of their delivery) of $5,744. and all but two of these were listed on the New York Stock Exchange. The disparity in value is obviously tremendous. The defendant told Mr.

---

* Italics throughout, ours.

** Unfortunately this amendment is not as clear or comprehensive as §22 of the Act of April 13, 1927, P. L. 273, 70 PS §22.

Martin that he needed the money for the purpose of investing in the Tri-State Petroleum Co., Inc., an oil venture.

Defendant's principal contention on this appeal is that since no money passed, the transactions with Martin involved "an even exchange of certain stocks for certain leases" and was consequently not a violation of the Securities Act. There is no merit in this contention.

The Title of the Securities Act states that it is to provide "for the registration and regulation of certain individuals and entities selling, contracting to sell or dispose of, attempting or offering to dispose of, soliciting offers to buy, or inducing holders thereof to exchange, securities defined herein, including securities issued by them, or engaging in the business of inducing holders of securities to effect the sale thereof in order to produce funds to pay for other investments sold by them . . . ." Section 2(b) of the Act defines the terms "sale" and "sell" as including ". . . every contract of sale or *disposition of,* attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value . . .". Penal statutes must be strictly construed: §58 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §558; *Smith v. Messner,* 372 Pa. 60, 92 A. 2d 417; *Labrum v. Commonwealth Title Company of Philadelphia,* 358 Pa. 239, 56 A. 2d 246; but that does not require us to hold that the words of a criminal statute must be given their narrowest meaning or that the lawmaker's evident intent must be disregarded: *United States v. Brown,* 333 U. S. 18, 68 S. Ct. 376, 92 L. Ed. 442; *United States v. Gaskin,* 320 U. S. 527, 64 S. Ct. 318, 88 L. Ed. 287; *United States v. Giles,* 300 U. S. 41, 57 S. Ct. 340, 81 L. Ed. 493; *Commonwealth v. Woods,* 136 Pa. Superior Ct. 326, 7 A. 2d 366.

The primary purpose of our Securities Act is to register and regulate dealers and salesmen of stocks, bonds and other securities in order to protect the investing or inexperienced public from designing or unscrupulous salesmen. Cf. *Commonwealth v. Woods*, 136 Pa. Superior Ct., supra. The Act was undoubtedly intended to cover and include unconscionable sales or exchanges such as occurred in the present case.

Appellant also urges that the evidence did not justify the lower Court in finding that Mason "engaged in the business of *inducing* Christian R. Martin". He relies chiefly on the following answers given by Martin on cross-examination: "Q. And you made an even trade for that stock? A. Yes. Q. And there was no force or inducement used to get you to do it? You did it willingly and cheerfully? A. I did it, myself. . . . Q. And you are perfectly satisfied with the whole 3 transactions? A. Yes." To say that Martin was not induced to part with his securities because he was not forced or coerced into delivering his stock to Mason or because he did it willingly puts too restricted a meaning on the word "induce". Webster's New International Dictionary (2nd ed.) defines "induce" as: "To lead on; to influence; to prevail on; to move by persuasion or influence . . .; to bring on or about; to effect; cause."

It would be stretching our credulity beyond the breaking point to believe defendant's contention that he did not induce Martin to dispose of his valuable securities for unknown and relatively worthless leases in New Mexico, as to which Martin without this inducement could have had little or no knowledge. Defendant did not take the witness stand to explain or justify his actions in what he has the temerity to call an "even exchange". The Judge acting as a jury could reasonably and justifiably find from the evidence that this grossly unfair exchange was not proposed or in-

duced by Martin but was brought about or effected or induced by defendant when he called on this gullible old man at his home; that defendant told Martin he needed the money for the purpose of investing in a petroleum venture; and that Martin's actions and testimony showed him to be incapable of inducing this transaction or of protecting himself from the inducement of designing or unscrupulous salesmen. The law was designed and is sufficiently broad to protect inexperienced or gullible persons from the machinations and inducements of unregistered salesmen who attempt to persuade such persons to sell or dispose of valuable securities for a small amount of cash or for securities which are worthless or of relatively little value.*

The judgment of sentence is affirmed.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

It may be that the defendant Edward Mason is an unparagoned swindler with as many financial sins on his head as have been posthumously attributed to Serge Rubenstein. It may be that he is an imposter of the first water and, from a moral point of view, richly deserves some mundane punishment. I am afraid, however, that in the understandable desire on the part of the lower court, the Superior Court and the Majority of this Court to punish a presumed malefactor they are laying down law which will ensnare in the future some perfectly honorable business men engaged in entirely innocent and legitimate transactions.

The superstructure of Section 22(b) of the Pennsylvania Securities Act is built on the word "induce," but "induce" in itself does not denote or connote evil.

---

*In order to produce funds to pay for other investments sold by such salesmen.

One may induce another to go to dinner, to take a trip, to buy a house, or exchange securities with no evil purpose in mind and with no resulting harm to the person who accepts the dinner, embarks on the journey, purchases the house or exchanges the securities. Inducement is not extortion, it is not deception, it is not fraud. In fact, the whole business world revolves on the axis of inducement. Advertising is inducement, salesmanship is inducement, letter writing is inducement. Remove inducement from current life and the rivers of commerce would shrink, the reservoirs of investment would stagnate, the wheels of industry would rust. In every conference, convention and consultation someone is trying to induce someone else to do something, and so long as the inducement speaks with the lips of honesty and appears on the table of forthright dealing, there can be no wrong. But under this decision almost any meeting between business men on the subject of securities may fall under the shadow of suspicion and the participants may be liable to prosecution under Section 22(b) of the Securities Act.

If it was the purpose of the Securities Act to absolutely prohibit dealers and salesmen from taking any part in the business of securities unless registered, the Act should have so stated. But it does not so state. It merely says that if one engages in the business of inducing others to do certain things not in themselves criminal he will be guilty of a misdemeanor. As I read the record in this case, there is nothing to show that the defendant Mason "engaged in the business of inducing holders of securities to effect the sale thereof." The record shows a meeting between Christian Martin and Edward Mason, repeated on two occasions, to exchange securities. How does this become "engaging in business?" Engaging in business means holding oneself out to buy, sell, barter or exchange generally

with the whole world or with a special clientele—not merely one person.

The record contains no evidence that Christian R. Martin was deceived, overreached or defrauded. As to the first exchange of securities he testified: "Q. That was an even trade, wasn't it? You traded that stock for that oil stock? A. Certainly. Q. And there was no force used to compel you to do it? A. No. Q. You did it willingly? A. Yes."

As to the second transaction, he testified: "Q. And you made an even trade for that stock? A. Yes. Q. And there was no force or inducement used to get you to do it? You did it willingly and cheerfully? A. I did it, myself."

He concluded his testimony as follows: "Q. And that was done under the same circumstances as the other? A. Yes. Q. And you still have those leases? A. Yes. Q. And you are perfectly satisfied with the whole 3 transactions? A. Yes. Q. Now, Mr. Martin, you knew when you did this these were securities from the State of New Mexico, oil leases in the State of New Mexico, they were New Mexico securities? A. Yes."

The securities given by Martin to Mason were not printed in the record, but the appellee endeavors to show in its brief that the leases which Martin received were inferior in value to the stock which he delivered to Mason in exchange. Thus the appellee says in its brief: "It is submitted that the values of the shares of stock are so readily determinable as matters of common knowledge that this Court could take judicial notice of such values; . . ."

I cannot take judicial knowledge of such values. I do not know what they are. Stock values are not unchangeable. On the contrary, they are as variable as the weather, as inconsistent as the waves of the sea, as unpredictable as Latin-American politics. To con-

vict a man on so unstable a foundation is to build a policy of law on quicksand.

The section of the statute under which this conviction has taken place is a scattershot weapon. While presumably aiming at a specific target it can hit anybody. Today it strikes Mason who may be a wolf in sheep's clothing. Tomorrow it may hit a real sheep.

Despite some conventional misimpressions in this direction, business men are generally engaged in an honest, honorable calling and should not be hamstrung, badgered and harassed by vague, rambling and indecisive legislation.