**[J-12-2020] [MO: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| MICHAEL WILLIAM WOODFORD AND OPTIONS INSURANCE AGENCY, | : | No. 65 MAP 2019 |
| | : | |
| | : | Appeal from the Order of the |
| Appellants | : | Commonwealth Court at No. 1005 |
| | : | CD 2018 dated January 4, 2019, |
| | : | reconsideration denied February 15, |
| v. | : | 2019, affirming in part and reversing |
| | : | in part the decision of the PA |
| | : | Insurance Department at No. SC16- |
| COMMONWEALTH OF PENNSYLVANIA | : | 11-001 dated June 21, 2018. |
| INSURANCE DEPARTMENT, | : | |
| | : | ARGUED:  March 11, 2020 |
| Appellee | : | |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE TODD**                                                    **DECIDED:  December 22, 2020**

I join Parts I and II.A of the Majority Opinion, as I agree we should reject the Commonwealth Court's categorical conclusion that the *Nanty-Glo* rule, established by our decision in *Borough of Nanty-Glo v. American Surety*, 163 A. 523 (Pa. 1932) (holding that it was improper for a court to direct a verdict in favor of a party at a civil trial based solely on the uncontradicted testimony of that party's witnesses, as it deprived the jury, as finder of fact, from assessing the credibility of those witnesses), has no application in administrative proceedings.   As the majority highlights, our Court subsequently recognized the *Nanty-Glo* rule's broader applicability to summary judgment proceedings in civil cases in *Penn Center House v. Hoffman*, 553 A.2d 900 (Pa. 1989), wherein we ruled that "[t]estimonial affidavits of the moving party or his witnesses . . . even if uncontradicted, will not afford sufficient basis for the entry of summary judgment, since the credibility of the testimony is still a matter for the jury."  *Id.* at 903.  Consequently, as

the *Nanty-Glo* rule applies whenever a finder of fact is called upon to resolve a credibility issue in a civil proceeding, it should be followed whenever an administrative agency or tribunal acts as the finder of fact in issuing an adjudication. Inasmuch as the Insurance Commissioner, in ruling on Appellants' motion for summary judgment, was acting as the finder of fact, and because she recognized that genuine issues of material fact were raised by Appellants' affidavit regarding the propriety of the challenged fees, which could only be resolved through an evidentiary hearing at which the credibility of the affiant could be assessed, the Commissioner properly followed the *Nanty-Glo* rule in deciding Appellants' motion for summary judgment.

With respect to Part II.B of the Majority Opinion, I also agree that 40 P.S. § 310.74(a) of the Insurance Department Act ("Act") – which the Commissioner found Appellants to have violated, and, as a result, required, *inter alia*, that they pay a fine of $5,000 – is ambiguous. *See* Majority Opinion at 21. As the majority develops, the competing legal interpretations of the text of Section 310.74(a) advanced by the Insurance Department and Appellants are both reasonable with regard to the question of whether Section 310.74(a) permitted Appellants to charge additional fees beyond commissions in personal insurance transactions, given that it does not explicitly prohibit them from doing so. *See JP Morgan Chase Bank N.A. v. Taggart*, 203 A.3d 187, 194 (Pa. 2019) ("A statute is ambiguous when there are at least two reasonable interpretations of the text.").[1] However, for the following reasons, I must respectfully dissent from the

---

[1] In this regard, I am unpersuaded by the assertion in Justice Wecht's Concurring Opinion that, because the Act is part of a comprehensive regulatory scheme, this fact counsels against a finding of ambiguity as to this particular portion of the Act. *See* Concurring Opinion, Wecht J. at 3 ("[T]he Act is a comprehensive regulatory scheme that clearly begins with the assumption that insurance producers can do nothing, and then proceeds to authorize only certain activities. Given this structure, we should assume that any practices the General Assembly did not explicitly authorize were intentionally disallowed. To hold otherwise would needlessly inject ambiguity throughout the Act."). A judicial

majority's ultimate conclusion that Section 310.74(a) was not penal in nature and, therefore, not subject to the rule of strict construction. Accordingly, I would construe that section in favor of Appellants.

The Act was intended to provide a comprehensive regulatory framework governing the "transacting [of] any class of insurance business," 40 P.S. § 23, and it makes it unlawful for individuals to engage in "the transaction of the business of insurance, without fully complying with the provisions of [the Act]," 40 P.S. § 26. Thus, with respect to the conduct of insurance producers such as Appellants, Subarticle B of the Act, entitled

---

assessment of a particular statute's ambiguity by necessity is confined to an examination of the actual statutory language at issue in the case under review, and evaluation of the reasonableness of the parties' competing suggested interpretations thereof. Merely because our Court, or any court, determines that one portion of a comprehensive statutory scheme is ambiguous does not, *ipso facto*, inject ambiguity into other portions of the overall statutory scheme that statute is part of, as the concurrence suggests. *Compare, e.g.*, *Chamberlain v. Unemployment Compensation Board of Review*, 114 A.3d 385, 394–95 (Pa. 2015) (engaging in statutory construction to discern the meaning of the term "incarceration" as used in the Unemployment Compensation Law because it was reasonably susceptible of two different meanings) with *A Special Touch v. Department of Labor and Industry*, 228 A.3d 489 (Pa. 2020) (finding that the phrase "customarily engaged," as used in the Unemployment Compensation Law was unambiguous and defining the phrase in accordance with its plain meaning). Thus, each provision of the Act ought to be evaluated according to its own terms.

Moreover, when a statute is silent as to its application to particular factual circumstances and does not directly address whether it can be applied to legal questions arising from such situations, as Section 310.74 is with respect to the question of whether licensed insurance producers can charge fees in addition to commissions for non-commercial insurance transactions, our Court has heretofore regarded such silence as a form of ambiguity requiring resort to the tools of statutory construction, which included consideration of the reasonableness of the interpretation of the statute by the administrative agency tasked with effectuating and enforcing that law. *See, e.g.*, *Powell v. Housing Authority of City of Pittsburgh*, 812 A.2d 1201 (Pa. 2002) (because Congress, in enacting Section 8 of the United States Housing Act, did not speak to the question of whether a public housing authority may lawfully terminate the lease of a public housing tenant if a member of the tenant's household or guest engages in drug related activity without the tenant's actual or reasonable knowledge, examination of other factors to discern Congress's intent, including the interpretation of the agency responsible for implementing the Housing Act, was warranted). I therefore find the majority's conclusion that Section 310.74 is ambiguous to be amply supported.

"Regulation of Insurance Producers," enumerates certain specific "prohibited" activities which insurance producers are wholly forbidden from engaging in, 40 P.S. §§ 310.41-310.51, and other activities in which their conduct is "regulated," *i.e.*, subjected to statutorily specified restrictions, 40 P.S. §§ 310.71-310.79. The Act further provides that, upon a determination that an insurance producer has violated any of these prohibitions or regulations, the Insurance Commissioner may impose, *inter alia*, a "[d]enial, suspension, refusal to renew or revocation of the license" of the producer; and "[a] civil penalty not to exceed $5,000" for each violation. 40 P.S. § 310.91. From my perspective, the Act establishes the fundamental rules governing the business of insurance in this Commonwealth, which the legislature, in its policy judgment, sought to regulate, and those activities which are not barred or restricted by its provisions are presumptively permissible.

As the majority recognizes, and the parties agree, Section 310.74(a) does not expressly prohibit the charging of a fee in addition to a commission for the sale, solicitation, or negotiation of a contract of insurance for non-commercial insurance; rather, it merely states that "[a] licensee may charge a fee in addition to a commission to a person for the sale, solicitation or negotiation of a contract of insurance for *commercial business*." 40 P.S. § 310.74(a) (emphasis added). Nevertheless, the majority applies the rule of *expressio unius est exclusion alterius* to find this provision, *by implication*, prohibits a producer from charging such fees in all non-commercial transactions. I find this "prohibition by implication" construction to be legally unsupported and wholly inapt, given that, in my view, Section 310.74(a) is penal in nature and, accordingly, must be strictly construed. *See* 1 Pa.C.S. § 1928(b)(1) (requiring penal provisions in all statutes to be strictly construed).

As a general matter, our Court long ago recognized that "[a] penal statute is one which imposes a penalty or forfeiture for transgressing its provisions, or for doing a thing prohibited, and it is none the less (sic) a penal statute [even though] it is also remedial." *Nesbit v. Clark*, 116 A. 404, 406 (Pa. 1922). Thus, in considering whether a particular statutory provision is penal in nature, and therefore subject to strict construction, we must consider the primary purpose of the specific provision in question, when read in conjunction with other portions of the statutory framework in which it appears. *Snyder Brothers v. PUC*, 198 A.3d 1058, 1075 n.21 (Pa. 2018). Hence, a statutory provision may be construed as penal in nature even if it appears within an overall statutory scheme that is remedial. *See Verona v. Schenley Farms Co.*, 167 A. 317, 320 (Pa. 1933) ("'[T]here is no impropriety in putting a literal construction on a penal clause, and a liberal construction on a remedial clause' in the same statute."); *see also* 3 Sutherland Statutory Construction § 60:4 (8th ed.) (approving of judicial practice of separately construing the penal and remedial provisions of a statutory scheme by strictly construing the penal ones, while liberally construing the remedial provisions, noting that this approach "serves the disparate interests of the persons the law penalizes on the one hand and benefits on the other").

Consistent with this principle, our Court has regarded portions of a comprehensive statute which restricted real estate professionals' conduct for the remedial purpose of protecting the public, but which correspondingly imposed penalties such as loss of licensure and civil fines for violating its provisions, as penal in nature; accordingly, we strictly construed those provisions in favor of the licensee. *See Pa. State Real Estate Commission v. Keller*, 165 A.2d 79, 80 (Pa. 1960) (the Real Estate Broker's Law, which authorized the suspension of a broker's license for violating its provisions, was penal and subject to strict construction); *cf. Commonwealth v. Mason*, 112 A.2d 174 (Pa. 1955)

(Securities Act which required the registration of, and regulation of the conduct of, individuals engaged in the buying, selling, and disposition of securities, was a penal statute subject to strict construction). Moreover, our Court has expressly refused to read an implied compliance requirement into a statute we considered penal in nature, whenever the legislature did not include such a requirement, because we deemed this as violative of this principle of strict construction. *See Smith v. Messner*, 92 A.2d 417, 419 (Pa. 1952) (where Realty Transfer Tax Act did not provide that an agreement of sale was a taxable document, our Court would not conclude such a document was taxable "by implication" given that the statute was penal in nature).

Consequently, while I agree with the majority's assertion that the Act serves the salutary remedial purposes of "protecting both buyers and sellers of insurance through a comprehensive scheme that includes protections for insurance consumers as well as clear guidelines for entities that sell insurance," Majority Opinion at 22, unlike the majority, I regard the *primary* purpose of Section 310.74, along with its companion statutes in Subarticle B, to be proscriptive in nature and intended to prohibit or limit particular insurance sales practices by setting parameters on whether and how they may be conducted; hence, I deem the penalty provisions of Section 310.91(a) to be the enforcement means to accomplish this primary purpose. Thus, in my view, Section 310.74(a) should be considered a penal statute subject to strict construction.[2]

---

[2] This statutory provision stands in marked contrast to the provisions at issue in *Snyder Brothers* which our Court determined had, as their primary objective, a remedial purpose — compensating municipalities for the deleterious impacts of oil and gas drilling activities. *See* 198 A.3d at 1075 n.21 ("Inasmuch as the chief purpose of the impact fee provisions of Chapter 23 is to help municipalities offset the adverse effects of the production of natural gas from unconventional wells within their borders, these provisions are remedial in nature. Because the separate penalty provisions are merely the means by which these remedial measures are enforced, strict construction of the impact fee provisions is not

The rule of strict construction of penal statutes is "'not merely a convenient maxim of statutory construction,' but, rather, 'is rooted in fundamental principles of due process which mandate that no individual be forced to speculate, at peril of [legal sanction], whether his conduct is prohibited.'" *Commonwealth v. Smith*, 221 A.3d 631, 639 (Pa. 2019) (internal citation and quotation marks omitted). Thus, inasmuch as Section 310.74(a) does not, by its plain terms, provide fair warning to insurance producers that charging a fee beyond a commission for the sale, solicitation, or negotiation of a contract of insurance for non-commercial business is prohibited, I would find that it must be strictly construed in favor of Appellants.

Therefore, I would vacate the order of the Insurance Commissioner imposing a fine and other sanctions on Appellants for violating Section 310.74(a). On this basis, I respectfully dissent.

---

required."). Hence, unlike in the case at bar, the penalties for violations of the impact fee provisions in *Snyder Brothers* served only to further that primary remedial purpose.