UNITED STATES v. EBERHART et al.

(Circuit Court, N. D. Georgia. February 24, 1899.)

1. PEONAGE—ABOLITION—STATUTES—APPLICATION.

Rev. St. § 5526 [U. S. Comp. St. 1901, p. 3715], abolishing and forever prohibiting the system of peonage in the territory of New Mexico and other parts of the United States, has no application to the state of Georgia, in which such system never existed.

2. SAME—INDICTMENT.

An indictment charging defendants with restraining certain named persons of African descent of their personal liberty, and with compelling them to render service for defendants against their will, did not state an offense within Rev. St. § 5526 [U. S. Comp. St. 1901, p. 3715], abolishing and prohibiting the system of peonage in New Mexico and elsewhere in the United States.

E. A. Angier, U. S. Atty., and Geo. L. Bell, Asst. U. S. Atty.

Alex. S. Erwin, T. W. Rucker, Hamilton McWhorter, and E. T. Brown, for defendants.

NEWMAN, District Judge. The indictment charges the defendants with certain acts in restraint of the personal liberty of named persons of African descent, and characterizes these acts as peonage, and charges the defendants with holding the persons named as peons, and with returning them to a condition of peonage, in violation of the act of Congress of March 2, 1867, c. 187, 14 Stat. 546, Rev. St. § 5526 [U. S. Comp. St. 1901, p. 3715]. The act of Congress named, entitled "An act to abolish and forever prohibit the system of peonage in the territory of New Mexico, and other parts of the United States," was aimed at a system. Its purpose was to abolish and forever prohibit the system known as "peonage," as it existed in New Mexico and elsewhere. A full discussion of this system, and how it came to exist in New Mexico, will be found in the case of Jaremillo v. Romero, 1 N. M. 190. It came with the territory ceded to the United States by the treaty with Mexico after the Mexican War. It was part of the system of the people inhabiting that territory. The clear purpose of the act was to deal with this system by abolishing it and prohibiting a return to it. An examination of the act will show that this is true, beyond question. No such system as this ever existed in Georgia. African slavery existed, but this was the ownership of Africans and persons of African descent as chattels. There could not be, therefore, in Georgia, any such thing as holding persons under this system of peonage, or returning them to it. It would be the merest perversion of this act to attempt to apply it to an ordinary case of restraint of personal liberty, and the case is not strengthened by the charge that the person so restrained is of African descent. However wrongful and illegal some of the acts charged in the indictment may be, they cannot be punished under the statute named. The purpose of this act, as stated, was to abolish this system of peonage, and to render null and void all acts, laws, resolutions, orders, regulations, or usages in New Mexico or elsewhere which established or which sought to establish this system. The penal part

of the act will not be enlarged beyond the scope and purpose of the act as above indicated. The penalty is for holding under, or for arresting or returning to, this condition of peonage. A person must have been held under this system, or arrested and returned to it; that is, to a pre-existing condition of peonage.

It may be added that, even if the act of Congress on which this indictment is based could be held applicable in Georgia, the acts set out in the indictment are nothing like the old system of peonage. That system seems to have been, even as it came from Mexico, a voluntary system of labor and of servitude. The individual, in the beginning, at least, voluntarily assumed this service. He was afterwards, it is true, held to the service against his will until his contract was discharged; and he could be held under it, or by the custom and usages of the country arrested and returned to it. Certain it is that by the act of the territorial Legislature of New Mexico of 1852 (Laws 1851–52, p. 184), which was probably in force when the act of Congress was passed, the service must have been voluntarily entered into. Jaremillo v. Romero, supra. So that both under the old system of peonage as it came from Mexico, and also as it was embodied in the statute law of New Mexico, the contract was entered into freely and voluntarily by the servant. The act of Congress on which this indictment is based is inapplicable in Georgia, and, even if applicable here, the facts set out in the indictment are not such as make a case under the act. To merely characterize acts in restraint of personal liberty as peonage is not sufficient to make them such—certainly not under this act of Congress.

### NOTE.

The foregoing opinion was filed in 1899, but has not before been published. Since this decision, Judge Jones, of the Northern District of Alabama, has taken what seems to be a different view of the matter, in some respects at least, as shown by his "Response to Questions by Grand Jury." In re Peonage Cases, 123 Fed. 671. It is understood that Judge Speer, of the Southern District of Georgia, and Judge Swayne, of the Northern District of Florida, have also held differently, but in cases which, so far as known, have not been reported. Circuit Judge Shelby had a peonage case before him on habeas corpus. In re Lewis, 114 Fed. 963. Judge Shelby states, however, in reference to the question involved here, that it "need not now be decided." Cases on writ of error from the Northern District of Florida are pending in the Circuit Court of Appeals for the Fifth Circuit, but have not yet been heard.