# UNITED STATES v. GASKIN.

No. 68.   Argued December 7, 8, 1943.—Decided January 3, 1944.

*Mr. W. Marvin Smith,* with whom *Solicitor General Fahy, Assistant Attorney General Berge, Messrs. Oscar A. Provost* and *George Earl Hoffman,* and *Miss Beatrice Rosenberg* were on the brief, for the United States.

*Mr. Marion B. Knight,* with whom *Messrs. A. L. Brogden* and *Harley Langdale* were on the brief, for appellee.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

An indictment was returned against the appellee in the District Court for Northern Florida which charged that he arrested one Johnson "to a condition of peonage," upon a claim that Johnson was indebted to him, and with intent to cause Johnson to perform labor in satisfaction of the debt, and that he forcibly arrested and detained Johnson against his will and transported him from one place to another within Florida.  There was no allegation

that Johnson rendered any labor or service in consequence of the arrest. From a judgment sustaining a demurrer,[1] the United States appealed.[2]

The charge is laid under § 269 of the Criminal Code,[3] which is: "Whoever holds, arrests, returns, or causes to be held, arrested, or returned, or in any manner aids in the arrest or return of any person to a condition of peonage, shall be fined . . . or imprisoned . . . ."

The District Court held that the statute imposes no penalty for an arrest with intent to compel the performance of labor or service unless the person arrested renders labor or service for a master following the arrest.

We think this was error. Section 269 derives from § 1 of the Act of March 2, 1867,[4] which abolished and prohibited the system known as peonage in any territory or state, nullified any law, ordinance, regulation, or usage inconsistent with the prohibition, and added criminal sanctions in the language now constituting § 269. The Act was passed further to implement the Thirteenth Amendment and is directed at individuals whether or not acting under color of law or ordinance.[5]

The section makes arrest of a person with intent to place him in a state of peonage a separate and independent offense. It penalizes "whoever holds, arrests, returns, or causes to be held, arrested, or returned . . . any person to a condition of peonage." The language is inartistic. The appropriate qualifying preposition for the word "holds" is "in." An accurate qualifying phrase for the

---

[1] 50 F. Supp. 607.

[2] Pursuant to the Criminal Appeals Act, 18 U. S. C. § 682.

[3] 18 U. S. C. § 444.

[4] 14 Stat. 546.

[5] *Clyatt* v. *United States,* 197 U. S. 207, 218; *Bailey* v. *Alabama,* 219 U. S. 219, 241; *United States* v. *Reynolds,* 235 U. S. 133; *Taylor* v. *Georgia,* 315 U. S. 25.

verb "arrests" would be "to place in or return to" peonage. But the compactness of phrasing and the lack of strict grammatical construction does not obscure the intent of the Act. Years ago this Court indicated that the disjunctive phrasing imports that each of the acts,—holding, arresting, or returning,—may be the subject of indictment and punishment.[6] We think that view is sound apart from any consideration of the legislative history of the enactment. But when viewed in its setting no doubt of the purpose of the statute remains.

The Act of 1867 was passed as the result of agitation in Congress for further legislation because of the use of federal troops to arrest persons who had escaped from a condition of peonage.[7] The first section abolished and prohibited peonage and made certain practices in connection therewith criminal. The second section imposed a duty on all in the military and civil service to aid in the enforcement of the first, and provided that if any officer or other person in the military service should offend against the Act's provisions he should, upon conviction by a court martial, be dishonorably dismissed from the service.[8] It is plain that arrest for the purpose of placing a person in or returning him to a condition of peonage was one of the evils to be suppressed.

The appellee invokes the rule that criminal laws are to be strictly construed and defendants are not to be convicted under statutes too vague to apprise the citizen of the nature of the offense. That principle, however,

---

[6] *Clyatt* v. *United States, supra,* 218, 219.

[7] Cong. Globe, 39th Cong., 2d Sess., Vol. 74, Pt. 1, pp. 239–241. *Ibid.* Vol. 76, Pt. 3, p. 1571. Senate Report No. 156, 39th Cong., 2d Sess., pp. 325, 326.

[8] This section became § 5527 of the Revised Statutes and was repealed and reënacted in part by § 270 of the Criminal Code. See 18 U. S. C. § 445.

does not require distortion or nullification of the evident meaning and purpose of the legislation.[9]

The judgment is

*Reversed.*

MR. JUSTICE MURPHY, dissenting:

We are dealing here with a criminal statute, the penalties of which circumscribe personal freedom. Before we sanction the imposition of such penalties no doubts should exist as to the statutory proscription of the acts in question. Otherwise individuals are punished without having been adequately warned as to those actions which subjected them to liability.

It is doubtful whether an arrest not followed by actual peonage clearly and unmistakably falls within the prohibition of § 269 of the Criminal Code. The court below, at least, felt that the statute did not cover such a situation. Other judges have expressed similar doubts. *United States* v. *Eberhart,* 127 F. 252; dissenting opinion in *Taylor* v. *United States,* 244 F. 321, 332, 333. And in order to reach the opposite conclusion, this Court labels the statutory language as "inartistic" and as lacking in "strict grammatical construction." It then proceeds to rewrite the statute, in conformity with what it conceives to have been the original intention of Congress, so as to penalize "whoever . . . arrests . . . any person for the purpose of placing him in a condition of peonage." I cannot assent to this judicial revision of a criminal law. Congress alone has power to amend or clarify the criminal sanctions of a statute.

Apologia for inadequate legislative draftsmanship and reliance on the admitted evils of peonage cannot replace the right of each individual to a fair warning from Congress as to those actions for which penalties are inflicted.

---

[9] *Gooch* v. *United States,* 297 U. S. 124, 128; *United States* v. *Giles,* 300 U. S. 41, 48; *United States* v. *Raynor,* 302 U. S. 540, 552.

Punishment without clear legislative authority might conceivably contain more potential seeds of oppression than the arrest of a person "to a condition of peonage."