## UNITED STATES *v.* BROWN.

No. 100. Argued January 5–6, 1948.—Decided February 2, 1948.

*Robert W. Ginnane* argued the cause for the United States. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Quinn, W. Marvin Smith, Robert S. Erdahl* and *Philip R. Monahan.*

*Elmo B. Hunter* argued the cause and filed a brief for respondent.

MR. JUSTICE RUTLEDGE delivered the opinion of the Court.

The Federal Escape Act requires that a sentence for escape or attempt to escape "shall begin upon the expiration of, or upon legal release from, any sentence under which such person is held at the time of" the escape or

attempt.[1]   The narrow question is whether the Act requires that a sentence for attempt to escape shall begin upon the expiration of the particular sentence being served when the attempt occurs or at the expiration of the aggregate term of consecutive sentences then in effect, of which the one being served is the first.

The facts are these.   Respondent was charged under two indictments in the District Court for the Western District of Arkansas.   One contained two counts, the first charging conspiracy to escape, the second attempt to escape.   The other indictment was for violation of the National Motor Vehicle Theft Act.   41 Stat. 324, 59 Stat. 536.   Respondent pleaded guilty to all three charges.

---

[1] The Act is as follows: "Any person committed to.the custody of the Attorney General or his authorized representative, or who is confined in any penal or correctional institution pursuant to the direction of the Attorney General, or who is in custody by virtue of any process issued under the laws of the United States by any court, judge, or commissioner, or who is in custody of an officer of the United States pursuant to lawful arrest, who escapes or attempts to escape from such custody or institution, shall be guilty of an offense. If the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense whatsoever, the offense of escaping or attempting to escape therefrom shall constitute a felony and any person convicted thereof shall be punished by imprisonment for not more than five years or by a fine of not more than $5,000, or both; and if the custody or confinement is by virtue of an arrest or charge of or for a misdemeanor, and prior to conviction, the offense of escaping or attempting to escape therefrom shall constitute a misdemeanor and any person convicted thereof shall be punished by imprisonment for not more than one year or by a fine of not more than $1,000, or both.   The sentence imposed hereunder shall be in addition to and independent of any sentence imposed in the case in connection with which such person is held in custody at the time of such escape or attempt to escape.   If such person be under sentence at the time of such offense, the sentence imposed hereunder shall begin upon the expiration of, or upon legal release from, any sentence under which such person is held at the time of such escape or attempt to escape."   49 Stat. 513, 18 U. S. C. § 753h.

On October 26, 1945, he was sentenced as follows: under the first indictment charging the escape offenses, imprisonment for one year on the second count, and for two years on the first count, the sentences to run consecutively in that order; under the motor vehicle theft indictment, imprisonment for two years, to run consecutively to the other two. Thus the aggregate of the three consecutive sentences was five years.

On November 2, 1945, respondent was serving the one-year term of the first sentence as ordered by the court. On that date he was being transported in custody of a United States marshal from an Arkansas jail to Leavenworth Penitentiary in Kansas.[2] During the journey's progress through Missouri he attempted to escape. This resulted in another indictment, in the Western District of Missouri, to which also respondent pleaded guilty. The District Court sentenced him to imprisonment for five years, the term "to begin at the expiration of any sentence he is now serving, or to be served which was imposed prior to this date . . . ."

Respondent filed a motion to correct this last sentence. He contended that at the time of the last attempt he was being "held," within the meaning of the last sentence of the Federal Escape Act, only under the one-year sentence pronounced in the Western District of Arkansas, and that the Act required the five-year sentence under the indictment returned in Missouri to commence at the expiration of that one-year term.

The District Court overruled the motion. It held that under the statute the sentencing court could order that the sentence begin to run after the service of any one or all of respondent's three prior sentences. 67 F. Supp. 116. The Circuit Court of Appeals, however, reversed

---

[2] The sentence began to run as of the time respondent was committed to jail to await transportation to the Leavenworth Penitentiary. 47 Stat. 381, 18 U. S. C. § 709a.

the judgment. Relying on the canon of strict construction of criminal statutes, it equated the statutory word "held" to "serving," and concluded that a sentence for escape or attempt to escape must begin at the expiration of the particular sentence which the prisoner is serving at the time the escape or attempt occurs. Accordingly the court remanded the cause to the District Court with directions to correct the five-year sentence so that it would begin upon expiration of or legal release from the one-year sentence. 160 F. 2d 310. We granted certiorari because of the importance of the question in the administration of the Federal Escape Act.

Although prison breach or other escape by prisoners from custody was a crime under the common law,[3] there was no federal statute proscribing such conduct prior to the enactment of the original Federal Escape Act in 1930, 46 Stat. 327. That Act dealt only with escape or attempted escape while under sentence. It was enacted as part of a program sponsored by the Attorney General for the reorganization and improved administration of the federal penal system. H. R. Rep. No. 106, 71st Cong., 2d Sess. The Act took its present form in 1935, when it was broadened at the Attorney General's request[4] to cover escape while in custody on a federal charge prior to conviction.[5]

---

[3] Miller, Criminal Law 463–465.

[4] H. R. Rep. No. 803, 74th Cong., 1st Sess.; S. Rep. No. 1021, 74th Cong., 1st Sess.

[5] The Government's brief aptly summarizes some of the more serious considerations leading to adoption of the original and amended acts, as follows: "Escapes and attempted escapes from penal institutions or from official custody present a most serious problem of penal discipline. They are often violent, menacing, as in the instant case, the lives of guards and custodians, and carry in their wake other crimes attendant upon procuring money, weapons and transportation and upon resisting recapture."

The legislation reflects an unmistakable intention to provide punishment for escape or attempted escape to be superimposed upon the punishment meted out for previous offenses. This appears from the face of the statute itself. It first provides that persons escaping or attempting to escape while in custody, whether before or after conviction, shall be guilty of an offense. Then follow provisions for determining whether the offense shall be a felony or a misdemeanor, with corresponding prescriptions of penalties.

At this point the statute had no need to go further if the intention had been merely to leave to the court's discretion whether the penalties, within the limits prescribed, should run concurrently or consecutively in accordance with the generally prevailing practice. On that assumption the statute was complete, without addition of the last two sentences. But in that form the Act would have left the court with discretion to make the sentence run concurrently or consecutively with the other sentences previously in effect or put into effect in the case or cases pending when the escape occurred.

Precisely to avoid this more was added, in the explicit provisions that "the sentence imposed hereunder *shall be in addition to and independent of any* sentence imposed in the case in connection with which such person is held in custody at the time of such escape or attempt to escape. If such person be under sentence at the time of such offense, the sentence imposed hereunder *shall begin upon the expiration of, or upon legal release from, any* sentence under which such person is held at the time of such escape or attempt to escape." (Emphasis added.)

These sentences foreclosed, and were intended to foreclose, what the earlier portions of the Act had left open, namely, the court's power to make the escape sentence run concurrently with the other sentences.[6] Whether the

---

[6] But see *Rutledge* v. *United States*, 146 F. 2d 199.

escape was before or after conviction, additional punishment was made mandatory, in the one case by the explicit requirement, "in addition to and independent of" any sentence imposed; in the other by the command that the escape sentence "shall begin upon the expiration of, or upon legal release from, any sentence," etc. The differing verbal formulations were necessary to meet the different "before" and "after" conviction situations. But the two provisions had one and the same purpose, to require additional punishment for the escape offense. The idea of allowing the escape sentences to run concurrently with the other sentences was completely inconsistent with this common and primary object, as well as with the wording of the two concluding clauses. In many cases such concurrent sentences would nullify the statutory purpose altogether; in others, they would do so partially.[7]

Moreover, imposition of such additional punishment had been the prime object, indeed the only one, of the original Escape Act, which was applicable only to escapes after conviction. It made such escapes or attempts "offenses," punishable by imprisonment for not more than five years, "such sentence to begin upon the expiration of or upon legal release from the sentence for which said person was originally confined."[8] This provision, though

---

[7] Depending on whether the term of the sentence for escape, as of the time of its imposition, is shorter or longer than the periods of the other sentences remaining unserved.

[8] The Act was as follows: "Any person properly committed to the custody of the Attorney General or his authorized representative or who is confined in any penal or correctional institution, pursuant to the direction of the Attorney General, who escapes or attempts to escape therefrom shall be guilty of an offense and upon apprehension and conviction of any such offense in any United States court shall be punished by imprisonment for not more than five years, such sentence to begin upon the expiration of or upon legal release from the sentence for which said person was originally confined." 46 Stat. 327.

differing from the wording of the last sentence of the present Act, had the same prime object. Concurrent sentences were as inconsistent with its terms as with those of the present Act, for in many cases like this one they would have added no further punishment in fact.

Congress, it is true, did not cast the original Act in terms specifically relating to a situation comprehending consecutive sentences existing at the time of the escape or attempt, as more careful drafting of the Act would have required to insure achieving the object of adding independent punishment in all cases. Its concentration upon that main aspect of the legislation apparently led it to reduced emphasis upon and care in the definition of the situations to which the Act would apply.

Nevertheless in view of the Act's broad purpose, it would be diffcult to conclude that the original phrasing, "the sentence for which said person was originally confined," was intended to apply only to the sentence, one of several consecutive ones, which the prisoner happened to be serving when the escape or the attempt occurred, or that the Act would be effective only where the prisoner was serving time under a single sentence, which was perhaps the more common of the situations which Congress had in mind. The same basic reasons which require rejection of either of those views of the present Act would apply to the original one.

But, in any event, Congress changed the wording of the "after expiration or release" clause in the original statute when enacting the amended one. "The sentence for which said person was originally confined" became "any sentence under which such person is held at the time of such escape or attempt to escape." This change is not without significance. For use of the words "*any* sentence under which such person is *held*" means something more than the narrowest possible construction of "*the* sentence

for which said person *was originally confined,"* unless the change is to be taken as meaningless. We think it was intended, as were the other amendments made at the same time, to broaden the Act's coverage or to assure its broad coverage,[9] and therefore to include situations where the prisoner was being "held" under more than one sentence. Otherwise there would be no reason for or meaning in the change.

We think therefore that the Act contemplates "additional" and "independent" punishment in both the concluding clauses in a practical sense, not merely in the technical sense of concurrent sentences having no effect to confine the prisoner for any additional time. In a very practical sense, a person in custody under several consecutive sentences is being "held" under the combined sentences. And the legislative language is a natural, though not nicely precise, way of stating the purpose that the sentence for escape shall begin upon the expiration of the aggregate of the terms of imprisonment imposed by earlier sentences. Granted that the present problem could have been obviated by even more astute draftsmanship, the statute on its face and taken in its entirety sufficiently expresses the congressional mandate that the sentence for escape is to be superimposed upon all prior sentences.

We are mindful of the maxim that penal statutes are to be strictly construed. And we would not hesitate, present any compelling reason, to apply it and accept the restricted interpretation. But no such reason is to be found here. The canon in favor of strict construction is not an inexorable command to override common sense and evident statutory purpose. It does not require mag-

---

[9] Either by eliminating the original wording's ambiguity by rejecting the narrow construction or, if that construction were thought valid, by changing the Act's terms to insure a different result.

nified emphasis upon a single ambiguous word in order to give it a meaning contradictory to the fair import of the whole remaining language. As was said in *United States* v. *Gaskin,* 320 U. S. 527, 530, the canon "does not require distortion or nullification of the evident meaning and purpose of the legislation." Nor does it demand that a statute be given the "narrowest meaning"; it is satisfied if the words are given their fair meaning in accord with the manifest intent of the lawmakers. *United States* v. *Raynor,* 302 U. S. 540, 552; *United States* v. *Giles,* 300 U. S. 41, 48; *Gooch* v. *United States,* 297 U. S. 124, 128; *United States* v. *Corbett,* 215 U. S. 233, 242.

To accept the decision of the Circuit Court of Appeals would lead to bizarre results. The congressional purpose would be frustrated, in part at least, in every situation where an escape is effected or attempted during the prisoner's service of any but the last of two or more consecutive sentences, possibly even in that instance. Barring intervention of executive clemency, it would be completely nullified in all cases where the consecutive sentences which the prisoner has not yet begun to serve aggregate five years or more. In the latter situation the prisoner could attempt any number of jail breaks with impunity. A court would be powerless to impose added confinement for violation of the Escape Act.

The holding of the Circuit Court of Appeals thus places it beyond the power of the judge to superimpose additional imprisonment for escape in those instances where such punishment is most glaringly needed as a deterrent.[10] There is also this further striking incongruity. The judge

---

[10] The $5,000 fine that could be imposed for each escape attempt, see note 1 *supra,* would be no deterrent to an impecunious offender, and little more than an empty threat to the long-incarcerated one whose all-consuming interest is freedom.

is completely interdicted from imposing an additional sentence for escape or attempt to escape, the one type of offense which Congress unmistakably intended to be subject to separate and added punishment, although he may direct that a sentence for any other federal offense shall begin at the expiration of consecutive sentences theretofore imposed.

No rule of construction necessitates our acceptance of an interpretation resulting in patently absurd consequences. And the absence of any significant legislative history, other than has been related, may be indicative that Congress considered that there was no such problem as is now sought to be injected in the statutory wording or that by the 1935 amendment it had cured the previously existing one. The liberty of the individual must be scrupulously protected. But the safeguards of cherished rights are not to be found in the doctrinaire application of the tenet of strict construction. Neither an ordered system of liberty nor the proper administration of justice would be served by blind nullification of the congressional intent clearly reflected in the Federal Escape Act.

The judgment of the Circuit Court of Appeals is

*Reversed.*

MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS dissent.