Opinion by
 

 Hirt, J.,
 

 These appeals are from an order quashing an indictment which charged the defendants, and Petroleum Drilling Corporation, with selling securities as dealers or salesmen without having registered with the Securities Commission of Pennsylvania in violation of the Act of June 24, 1939, P. L. 748, as reenacted and amended by the Act of July 10,1941, P. L. 317, 70 PS §31, et seq. The “security” alleged to have been sold in each of the nine counts of the indictment is described as “a one-thirty-second fractional undivided interest in oil, gas and other mineral rights, namely, a one-thirty-second working interest in and to the net proceeds from the sale of any oil and gas which shall be produced and marketed from the Deming Well Number II [or Deming Well III] situate in Washington Township, Tuscarawas County, in the State of Ohio . . .”
 

 The court quashed the indictment on the ground that the “working interest” in the proceeds of oil and gas alleged to have been sold in each instance was not a
 
 *277
 
 “security” within the definition of The Pennsylvania Securities Act, supra, and therefore no offense in violation of it, was charged.
 

 Section 3 of The Pennsylvania Securities Act, supra, 70 PS §33 provides that no dealer or salesman of such dealer shall sell any security in this State unless registered in accordance with the Act. Violation in this respect is made a misdemeanor by §22, 70 PS §52. Section 2, 70 PS §32 defines a security in this language: “The following terms shall, unless the context otherwise indicates, have the following respective meanings: (a) ‘Security’. The term ‘security’ means any bond, stock, collateral trust certificate, transferable share, investment contract, certificate under a voting trust agreement, treasury stock, note, debenture, certificate in or under a profit sharing or participation agreement, subscription or preorganization certificate,
 
 fractional undivided interest in oil, gas, or other mineral rights,
 
 evidence of indebtedness, certificate of deposit for a security, certificate or instrument representing or secured by an interest in the capital assets or property of any company, other instrument commonly known as a security, or certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing . . .” (Italics added.) There is merit in this, the Commonwealth’s appeal. In our view the subject matter of the sale as charged in each count was a security within the prohibition of the Act. The order will be reversed.
 

 It is only the penal
 
 provisions
 
 of a law that must be strictly construed. Statutory Construction Act of May 28,1937, P. L. 1019, Art. IV, §58,46 PS §558. And courts may put a literal construction on a penal clause and a liberal construction on a remedial clause in the same statute.
 
 Commonwealth v. Shaleen,
 
 215 Pa. 595, 64 A.
 
 797; Alford v. Raschiatore,
 
 163 Pa. Superior Ct. 635,
 
 *278
 
 63 A. 2d 366. The Pennsylvania Securities Act is remedial legislation. Its primary purpose is to protect the investing public. The Act contemplates an investigation to determine whether the securities are being offered to the public honestly and in good faith without any intent to deceive or defraud.
 
 Commonwealth v. Summons,
 
 157 Pa. Superior Ct. 95, 41 A. 2d 697. That part of the Securities Act therefore which specifies classes of investments which are within the contemplation of the legislation, is to be liberally construed. And the clear intent of the Act is not to be defeated by a too literal reading of words without regard to their context and the evils which the Act clearly was designed to correct. Even the canon of strict construction of a penal statute is not an inexorable command to override common sense and evident statutory purpose. As was said in
 
 United States v. Gaskin,
 
 320 U. S. 527, 530, 64 S. Ct. 318, 319, 88 L. Ed. 287: “[the canon] does not require distortion or nullification of the evident meaning and purpose of the legislation”. “Nor does it demand that a statute be given the ‘narrowest meaning’; it is satisfied if the words are given their fair meaning in accord with the manifest intent of the lawmakers”:
 
 United States v. Brown,
 
 333 U. S. 18, 68 S. Ct. 376.
 

 The language of the indictment limits the question to this: Under the statute is a “working interest in and to the net proceeds from the sale of . . . oil and gas . . .” the equivalent of a “fractional undivided interest in oil, gas or other mineral rights” ? The lower court in effect held that the expression “oil rights”, in Pennsylvania, has become a term of art with a restricted meaning referring only to oil in place, which is an interest in land; and since such interest in realty, alone, was referred to in the statute, personal property consisting in an interest in the net proceeds from the sale of oil and gas is not a security within the definition of the Act
 
 *279
 
 and therefore not within its purview. It may be noted that a royalty interest in an oil lease, as the subject matter of sale, had been held
 
 [1]
 
 not to be a security for the very reason that it was real property under The Securities Act of April 13, 1927, P. L. 273, which included “oil, gas or mining lease or certificate of any interest in or under the same”, within the definition of a security. The precise question was before the Supreme Court of the United States in
 
 Securities & E. Com’m v. C. M. Joiner L. Corp.,
 
 320 U. S. 344, 64 S. Ct. 120. In that case the Circuit Court of Appeals had adopted a construction of the Federal Securities Act of 1933 which excluded from its operation all trading in oil and gas leases. The definition of the term “security” under section 2 (1) of the Federal Act of May 27, 1933, as amended, 15 U. S. C. A. §77b(l), is substantially the same as that of the Pennsylvania Act and includes “fractional undivided interest in oil, gas, or other mineral rights” in the identical language of our Act. In that case the defendants held leases on a large tract of land in Texas which they had obtained in consideration of their agreement to drill a test well. On the inducement of the proposed exploration well they sold small subdivisions of their leasehold to about fifty purchasers on an acreage basis. The sales literature assured the prospect that the drilling of a well, so located as to test the oil producing possibilities of the offered leaseholds, would be pushed to completion. Other language in the advertising literature emphasized the character of the purchase as an investment and as a participation in an enterprise. In disposing of the question whether the sales of leasehold acreage were sales of “securities” the Court, said: “It is urged that because the definition mentions ‘fractional undivided interest in oil, gas or other mineral rights,’ it excludes sales of leasehold subdivi
 
 *280
 
 sions by parcels. Oil and gas rights posed a difficult problem to the legislative draftsman. Such rights were notorious subjects of speculation and fraud, but leases and assignments were also indispensable instruments of legitimate oil exploration and production. To include leases and assignments by name might easily burden the oil industry by controls that were designed only for the traffic in securities. This was avoided by including specifically only that form of splitting up of mineral interests which had been most utilized for speculative purposes. We do not think the draftsmen thereby immunized other forms of contracts and offerings which are proved as matter of fact to answer to such descriptive terms as ‘investment contracts’ and ‘securities’ ”. So also in our 1941 amendment, the legislation did not immunize all forms of oil and gas offerings other than those which are real property within a narrow reading of the definition of the Act. This seems doubly clear for the reason that all other forms of securities referred to in the defining provision are personalty. Because of the highly speculative nature of the oil industry, and the willingness of the gullible to invest in it, sales of oil rights in a variety of forms were intended to be made subject to the regulatory powers of the Commonwealth in our Securities Act.
 

 At the argument, below, the defendants submitted a typical written sales agreement entered into by the corporation and the defendants, with each purchaser referred to in the indictment, for the information of the court in disposing of the motion to quash. This without objection was made a part of the record in the case. The written agreement in each instance recited that the corporation is the lessee of “a. certain oil and gas Lease” of 110 acres of land in Tuscarawas County, Ohio, subject to “a royalty of
 
 y8
 
 of the oil or gas produced” reserved by the owner of the land. In the agreement the corpora
 
 *281
 
 tion agreed to begin at once the drilling of tlie well, for oil or gas, referred to in the agreement. From its terms it is clear that what the purchaser bought in each instance, as second party to the agreement, was more than a mere interest in the net proceeds from the sale of oil. The agreement provides that the corporation, the owner of the well under the lease, “upon written request of the party of the second part, will execute and deliver to the second party a recordable assignment of the second party’s
 
 interest in said well, together with the portion of the leasehold comprising the curtilage surrounding said well of a radius of Tioenty (20) Acres
 
 . . .” (Emphasis added.) The agreement also gave each purchaser a voice in the management of the well but provided for the appointment of the Corporation as “his true and lawful attorney for him and in his stead to operate and enter into contracts for the development and operation of said well . . .”
 

 This appeal does not turn on the question whether the interest alleged to have been sold is personalty or realty. Both are within the contemplation of the Act. This from the opinion of Mr. Justice Jackson in the
 
 Joiner
 
 case, supra, is equally applicable here: “In applying acts of this general purpose, the courts have not been guided by the nature of the assets back of a particular document or offering. The test rather is what character the instrument is given in commerce by the terms of the offer, the plan of distribution, and the economic inducements held out to the prospect. In the enforcement of an act such as this it is not inappropriate that promoters’ offerings be judged as being what they were represented to be.”
 

 Order reversed; indictment reinstated with a procedendo.
 

 [1]
 

 Hose v. Pennsylvania Securities Commission,
 
 21 D.
 
 &
 
 C. 444.