## Commonwealth v. Browne

*Joel Todd*, for Commonwealth.
*Daniel M. Preminger*, for defendant.

CAVANAUGH, *J.*, April 1, 1976—Larry Browne was arrested and indicted on charges of criminal conspiracy, hindering apprehension or prosecution, and abuse of corpse. Defendant filed a motion to dismiss bill of indictment, January term, 1976, No. 1003, charging him with abuse of corpse, Pennsylvania Crimes Code of December 6, 1972, P.L. 1482 (No. 334), 18 Pa.C.S. §5510, on the ground that the statute is excessively vague and, therefore, violative of due process of law. Section 5510 of the Pennsylvania Crimes Code reads:

"Except as authorized by law, a person who treats a corpse in a way that he knows would outrage ordinary family sensibilities commits a misdemeanor of the second degree."

Although a few other provisions of the Crimes Code have fallen under constitutional attack,[1] this

---

1. Other sections of the Crimes Code which have been found void-for-vagueness include:

Section 2706, Terroristic Threats. Commonwealth v. Howell, November term, 1975, no. 2763, Philadelphia County, Court of Common Pleas—Judge Chalfin.

Section 3302(b), Risking Catastrophe. Commonwealth v.

is the first time to our knowledge that this section of the code has come under constitutional review in a court of record of this Commonwealth. In order to decide the issue of whether the language of this penal statute offends the due process clause of the Fourteenth Amendment, we must examine the leading cases on the void-for-vagueness doctrine, the provisions of the Statutory Construction Act of November 25, 1970, P.L. 707 (No. 230), added December 6, 1972, P.L. 966 (No. 290), sec. 3, 1 Pa.C.S. §§1501, et seq., the text of the statute, the intent of the draftsmen, and the cases on the common-law offense of indecently disposing of a dead body.

In his brief in support of his motion to dismiss, defendant invokes the leading cases that have held that a criminal statute must give adequate notice to a person of ordinary intelligence of the conduct that it purports to proscribe: Lanzetta v. New Jersey, 306 U.S. 451, 59 S. Ct. 618, 83 L. Ed. 888 (1939), a statute that classified and punished certain persons as "gangsters"; Coates v. Cincinnati, 402 U.S. 611, 91 S. Ct. 1686, 29 L. Ed. 2d 214 (1971), an ordinance outlawing the congregation on a street of three or more persons conducting themselves in a manner "annoying" to persons passing by; Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S. Ct. 839, 31 L. Ed. 2d 110 (1972), a vagrancy

---

Hughes, August term, 1973, no. 1408, Philadelphia County, Court of Common Pleas—Anderson, *J.*

Section 5901, Open Lewdness. Commonwealth v. Heinbaugh, no. 108A January 1974, Allegheny County, Court of Common Pleas—Criminal Division.

Section 5901, Open Lewdness. Commonwealth v. Carbaugh, no. CC-265-75, Adams County Court of Common Pleas—Criminal Division, MacPhail, *P. J.*

Section 5903(a), Obscenity. Commonwealth v. MacDonald, 464 Pa. 435, 347 A. 2d 290 (1975).

ordinance that outlawed, inter alia, habitual loafing and strolling about from place to place with no lawful purpose.

In Grayned v. City of Rockford, 408 U.S. 104, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972), Mr. Justice Marshall explained why vague penal statutes offend the due process clause:

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges and juries for resolution to an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms.": 92 S. Ct. at 2298-99.

The Pennsylvania Statutory Construction Act of November 25, 1970, P.L. 707 (No. 230), added December 6, 1972, P.L. 966 (No. 290), sec. 3, 1 Pa.C.S. §§1501, et seq., provides, as among its several terms, that penal provisions are to be strictly construed (section 1928(b)(1)); that the object of all statutory interpretation and construction is to ascertain and effectuate the intention of the General Assembly (section 1921(a)); that it is presumed

that the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth (section 1922(3)); and that, where the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters, "The former law, if any, including other statutes upon the same or similar subjects.": Section 1921(c)(5).

The abuse of corpse section of the Crimes Code derives directly from section 250.10 of the Model Penal Code. This provision had no predecessor in The Penal Code of June 24, 1939, P.L. 872, secs. 101, et seq., 18 P.S. §§4101, et seq., although that code penalized the willful and malicious removal of a body from a tomb or grave: The Penal Code of 1939, supra, sec. 521, 18 P.S. §4521. Trafficking in dead bodies is penalized by section 5 of the Act of June 13, 1883, P.L. 119, as amended, 35 P.S. §1095. Section 5509 of the Crimes Code of December 6, 1972, P.L. 1482 (No. 334), 18 P.S. §5509, desecration of venerated objects, prohibits, inter alia, the desecration of a place of burial. The Model Penal Code Comment (T.D. no. 13 p. 40) explains the intendment of the abuse of corpse provision:

"There are occasional legislative provisions penalizing sexual relations with or other disrespectful treatment of corpses. The section is included here rather than in the chapter on sexual offenses because there we were concerned primarily with preventing physical aggressions, whereas here we deal with outrage to the feelings of surviving kin, outrage which can be perpetrated as well by mutilation or gross neglect as by sexual abuse. The exception made for activities authorized by law refers to the use of dead bodies for scientific re-

search and medical education, which activities are generally controlled by statute."

Although the enactment of the Crimes Code, supra, abolished common-law crimes (18 Pa.C.S. §107), the Statutory Construction Act, as cited above, authorizes this court to examine the prior law, among other matters, in ascertaining the intent of the General Assembly. Even though section 5510 had no statutory predecessor, the indecent disposition of a dead body was an indictable offense at common law. Our research has uncovered five cases in which courts have upheld convictions for this offense: Kavanan's Case, 1 Me. 205, 1 Greenleaf 226 (1821); State v. Bradbury, 136 Me. 347, 9 A. 2d 657 (1939); Baker v. State, 215 Ark. 851, 223 S. W. 2d 809 (1949); Commonwealth v. Keller, 35 D. & C. 2d 615 (Lebanon County, 1964); and State v. Hartzler, 78 N.M. 514, 433 P. 2d 231 (1967). These cases involved, variously, mutilation, gross neglect, and cremation of corpses for the purpose of concealing the remains. The court in Keller, while mindful of the need to restrict common-law crimes to offenses that genuinely outrage public decency, emphasized the respect which almost all ages and people have accorded the dead. The court discerned a societal revulsion against the outrageous treatment of dead bodies:

"It would seem unnecessary for a further extension of this opinion to rationalize the existence in this community of a well-established and known standard of decency and morality with respect to the disposition and treatment of dead bodies. Yet, the importance of this matter commands one further observation. From our childhood, we have all been accustomed to pay a reverential respect to

the sepulchres of our fathers and to attach a character of sacredness to the grounds dedicated and enclosed as the cemeteries of the dead. This standard of decency has been recognized by our legislators through the years, and they have made statutory provisions governing cemeteries, cemetery companies, reinterment and abandonment, crypts, burial permits, cremation, mutilation of graves and tombstones, mausoleums and vaults. At both common law and under the statutory law of this Commonwealth, it is an offense to dig up or disturb or desecrate bodies which have been buried. It is an outrage upon the public feelings and torturing to the afflicted relations of the deceased. If it be a crime thus to disturb the ashes of the dead, it must also be a crime to deprive them of a decent burial, by disgracefully exposing or disposing of the body, contrary to usages so long sanctioned by people and which are so grateful to the wounded hearts of friends and mourners, and this is so, irrespective of their religious aspects of burial and life hereafter, be it Christian, Jew, or Agnostic. We thus consider the common law as being sufficiently broad to punish as a misdemeanor, although there may be no exact precedent, any act which directly injures or tends to injure the public to such an extent as to require the state to interfere and punish the wrongdoer, as in the case of acts which injuriously affect public morality or obstruct or pervert public justice, or the administration of government: Commonwealth v. Mochan, 177 Pa. Superior Ct. 454.": 35 D. & C. 2d 628-29.

The Pennsylvania Supreme Court has held that "A penal statute must lay down a reasonably ascertainable standard of guilt; it must be sufficiently explicit to enable a citizen to ascertain with a fair

degree of precision what acts it intends to prohibit, and, therefore, what conduct on his part will render him liable to its penalties.": Commonwealth v. Zasloff, 338 Pa. 457, 13 A. 2d 67, 71 (1940). Several other cases have utilized a less stringent standard of review and have upheld the validity of legislation when the statute was susceptible of a reasonable construction that will support it and give it effect. This exception to the general rule of strict scrutiny has been announced in so many cases that it has virtually become a separate and antagonistic canon on construction. In Commonwealth v. Yaste, 166 Pa. Superior Ct. 275, 70 A. 2d 685 (1950), the Superior Court stated and followed the exception to the general rule:

"And the clear intent of the Act is not to be defeated by a too literal reading of words without regard to their context and the evils which the Act clearly was designed to correct. Even the canon of strict construction of a penal statute is not an inexorable command to override common sense and evident statutory purpose. As was said in United States v. Gaskin, 320 U.S. 527, 530, 64 S. Ct. 318, 319, 88 L. Ed. 287: '[the canon] does not require distortion of nullification of the evident meaning and purpose of the legislation'. 'Nor does it demand that a statute be given the "narrowest meaning"; it is satisfied if the words are given their fair meaning in accord with the manifest intent of the lawmakers': United States v. Brown, 333 U.S. 18, 68 S. Ct. 376.": 166 Pa. Superior Ct. at 278, 70 A. 2d at 687.

In Commonwealth v. Mason, 381 Pa. 309, 112 A. 2d 174 (1955), the Supreme Court cited the Statutory Construction Act of 1937 to the effect that penal statutes must be strictly construed but went

on to observe that the rule does not require that the words of a criminal statute must be given their narrowest meaning, nor does it require that the lawmaker's evident intent must be disregarded.

While we concede that the legislature could certainly have used more precise language in defining the conduct this statute makes criminal, we feel that it was not constitutionally obligated to do so. We find that the statute is susceptible of a reasonable construction, and we refuse to hold it unconstitutional. The legislature is here condemning in general terms the mutilation, sexual abuse, and gross neglect of dead bodies that the courts did when they found this conduct punishable as a common-law misdemeanor. The evident legislative intent should not be ignored or disregarded. We feel that the man of ordinary intelligence in this society knows what ordinary family sensibilities are toward the disposition of dead bodies and that the legislature need not have enumerated these sensibilities in any detail. In a recent case dealing with the prohibition against excessive vagueness, the Supreme Court observed:

"All the Due Process Clause requires is that the law give sufficient warning that men may conform their conduct so as to avoid that which is forbidden.": Rose v. Locke, 423 U.S. 48, 96 S. Ct. 243, 46 L. Ed. 2d 185 (1975).

We find that the legislature was provided sufficient warning. We further believe that enforcement of this statute will certainly not result in the infringement of First Amendment rights that was involved in Lanzetta, Coates and Papachristou, nor will it give rise to the danger of arbitrary and erratic arrests.

Wherefore, April 1, 1976, defendant's motion to dismiss bill of indictment no. 1003 of January term, 1976 is denied.

