STATE of Missouri,
Plaintiff–Respondent,

v.

Cole Wilson DAUGHERTY,
Defendant–Appellant.

No. 15056.

Missouri Court of Appeals,
Southern District,
En Banc.

Jan. 28, 1988.

---

Frederick W. Martin III, West Plains, for defendant-appellant.

William L. Webster, Atty. Gen., Karen A. King, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

MAUS, Judge.

An amended information charged the defendant committed the class C felony of trafficking in children, § 568.175, by offering $1,000 for the purchase of a child with the purpose of adopting the child. A separate information charged the defendant committed the class D felony of carrying a concealed weapon, § 571.030.1(1). The cases were consolidated for trial upon two counts. A jury found the defendant guilty of each charge and assessed his punishment on each charge at imprisonment for one year in the county jail and a fine of $500. The trial court ordered the sentences to run concurrently.

The defendant and one A.B. lived as neighbors in rural Howell County. A.B. from time to time worked as an "undercover agent" for the sheriff and highway patrol. This was apparently unknown to the defendant. On various occasions the defendant told A.B. he would like to buy a child. In December, 1985, the two were visiting while A.B. was cutting wood for the defendant. A.B. asked him how he lived without electricity. The defendant replied "the only thing in this world that really that he needed that he didn't have was modern electricity and—and tender young pussy." He added that he wanted to adopt a child, raise it as his own, and later on maybe marry her. Later in the month the defendant repeated to A.B. his desire to purchase a child.

A.B. realized the defendant was serious about buying a child. A.B. reported the

matter to the sheriff. Arrangements were made for A.B. to purport to be able to supply a child to the defendant. When the defendant again talked with A.B. about buying a child, A.B. told the defendant he knew a prostitute who was going to prison and would sell her child. The defendant said he "wanted a blonde-headed, blue-eyed baby girl roughly two years old, big enough to eat solid food, and that he wanted a birth certificate with her." The defendant further said "he would pay one thousand dollars for the baby girl with the stipulation that he could examine her and that if she was a virgin intact, he would pay one thousand dollars, and, if not, his exact words was she would be damaged products, so he would only pay five hundred."

An employee of the sheriff agreed to play the part of the prostitute. She met with the defendant at A.B.'s residence to verify to the defendant the deal was real. In talking to the employee, the defendant corroborated his desire. Arrangements were made to complete the purchase.

At about 6:00 p.m. that day A.B. and the pretended prostitute went to the defendant's home and said they were ready to close the deal. They drove, with the defendant following in his van, to a remote site in the woods. The sheriff and another confederate with a baby were waiting. The pretended prostitute assigned a fictitious birth certificate. The confederate seated at a distance in an automobile held aloft a baby so the defendant could see the child. The defendant paid the pretended prostitute $500 and advanced toward the automobile to inspect the child. The sheriff stepped from behind a building and arrested the defendant. The defendant had under his coat a loaded .357 magnum revolver. He also had another $500 in twenty dollar bills.

The defendant testified. He said he was 68 years old and wanted to marry "the youngest girl possible" so when he died she would receive social security payments through him for a long time. This was to "get even" with the Social Security Administration because in 1963 he had become totally and permanently disabled due to a motorcycle wreck and he was denied social security benefits for disability. He has been receiving regular benefits since he was 65.

The defendant said he wanted to buy the child from the pretended prostitute, but "didn't instigate the incident." He admitted meeting with A.B. and the pretended prostitute intending to "pay money for the little child." He denied that he intended to adopt her because "you can't marry an adopted child."

Three of the defendant's five points are interrelated. His first point is that the information was insufficient in that it failed to allege the defendant offered money for the delivery of the child. His second point is that the evidence was insufficient because there was no evidence the defendant offered money for the delivery of the child to a person or entity other than the defendant. His third point is that the verdict directing instruction on Count I was erroneous because it failed to require a finding that the defendant offered money for the delivery of a child to another person or entity other than the defendant. Section 568.175.1 provides:

> A person, partnership, corporation, agency, association, institution, society or other organization commits the crime of trafficking in children if he or it offers, gives, receives or solicits any money, consideration or other thing of value for the *delivery* or offer of delivery *of a child to another person,* partnership, corporation, agency, association, institution, society or other organization for purposes of adoption, or for the execution of a consent to adopt or waiver of consent to future adoption or a consent to termination of parental rights. (emphasis added).

The question common to the three points is whether the emphasized words are to be construed to proscribe delivery of a child to any person or only to a person other than

the one who offers money. To establish the latter, the defendant argues that this criminal statute must be construed liberally in favor of the defendant and strictly against the state. He cites *State v. Treadway*, 558 S.W.2d 646 (Mo. banc 1977), cert. denied, 439 U.S. 838, 99 S.Ct. 124, 58 L.Ed. 2d 135 (1978), overruled on other grounds. He also relies upon the maxim expressed in the following:

Statutes defining crime must be construed liberally in favor of the defendant and strictly against the State. They will not be interpolated as embracing any but those acts or omissions clearly described in the statute both within the letter and spirit of the law.... No person can be made subject to a criminal statute by guesswork or mere implication and a criminal statute is not to be held to include offenses or persons other than those which are clearly described and provided for both within the spirit and letter of the statute. If there is fair doubt as to whether the act charged and proved is embraced within the prohibition, that doubt will be resolved in favor of the accused.

*State v. Kayser*, 552 S.W.2d 27, 29–30 (Mo. App.1977) (citations omitted).

■ The canon of strict construction of criminal statutes is well recognized. However, that canon is not to be applied inflexibly, to override all other considerations. A limitation upon its application has been authoritatively expressed by the Supreme Court of the United States.

We are mindful of the maxim that penal statutes are to be strictly construed. And we would not hesitate, present any compelling reason, to apply it and accept the restricted interpretation. But no such reason is to be found here. The canon in favor of strict construction is not an inexorable command to override common sense and evident statutory purpose. It does not require magnified emphasis upon a single ambiguous word in order to give it a meaning contradictory to the fair import of the whole remaining language. As was said in *United States v. Gaskin*, 320 U.S. 527, 530, 88 L.Ed. 287, 290, 64 S.Ct. 318 [, 319 (1944)], the canon 'does not require distortion or nullification of the evident meaning and purpose of the legislation.' Nor does it demand that a statute be given the 'narrowest meaning;' it is satisfied if the words are given their fair meaning in accord with the manifest intent of the lawmakers.

*United States v. Brown*, 333 U.S. 18, 25–26, 68 S.Ct. 376, 380, 92 L.Ed. 442, 448 (1948). An excellent discussion of that limitation is found in Sutherland, Statutory Construction § 59.06 (4th ed. 1986). That limitation is recognized in this state. *State v. Ballard*, 294 S.W.2d 666 (Mo.App.1956).

■ Section 568.175 was adopted as part of a bill pertaining to the welfare of children and included provisions governing the adoption of children. Laws 1985 H.B. Nos. 366, 248, 372, 393. The obvious purpose of § 568.175 is to eliminate profit as a factor in the adoption of a child. It is apparent those most apt to offer money for the delivery of a child are prospective adoptive parents to whom a child is to be delivered. To construe the statute to prohibit only the delivery of a child to one other than the person offering to pay money is contrary to the purpose of the statute.

Moreover, such a construction would be contradictory to the fair import of the whole language of the statute. Sub-section 568.175.2 provides certain exceptions to the offense proscribed in § 568.175.1. For example, one of those exceptions is the payment of fees to a licensed child-placing agency. Again, if such fees are paid, it is expected they will be paid by prospective adoptive parents to whom the child is delivered. The enactment of such an exception would not be necessary if the statute would not otherwise bar the payment of fees by prospective parents.

Further, § 568.175 clearly makes it an offense for a person to receive money for the delivery of a child for purposes of adoption from any person, including the

person to whom the child is delivered. It would be an anomalous result to hold that one who offers to pay money for such a delivery to himself, does not commit an offense. The phrase "to another person" is properly construed to mean a person other than the one who has control of and is to deliver a child. This includes one who offers to pay money for such delivery. The defendant's argument to the contrary is denied.

The pertinent parts of the information read as follows: "[T]he defendant in violation of Section 568.175 ... offered one thousand dollars for the purchase of a child along with birth certificate ... and the defendant did so with the purpose of adopting said child." The defendant cites the following rule:

> 'Essential facts' means the elements of the offense and an information which does not allege the essential elements of the crime charged is void.... Essential elements of the crime charged which are missing from the information cannot be supplied by intendment or implication.... The purpose of an indictment or information is to inform the defendant of the charge against him so that he may prepare an adequate defense and plead former jeopardy if he be acquitted. It also has the purpose of permitting the trial court to determine whether sufficient facts are averred to support a conviction.

*State v. Atterberry*, 659 S.W.2d 339, 341 (Mo.App.1983) (citations omitted). Under his first point, the defendant additionally argues the information is void because "it does not say anything about a delivery of the child to any person or entity."

■ The defendant does not take cognizance of amplifications of the rule he cites. Subject to an exception not here applicable, it is well settled that an information

> must state essential facts constituting the offense charged, ... it must adequately notify a defendant of the charge against him and constitute a bar to further prosecution for the same offense,

> ... and if the information does these things following the language of the statute or *words of similar import, poor draftsmanship, if existent, will not render it fatally defective....*

*Hodges v. State,* 462 S.W.2d 786, 789 (Mo. 1971) (emphasis added) (citations omitted). "An information is not to be measured as if it were a part of some pedantic exercise." *State v. Daniels,* 655 S.W.2d 106, 107 (Mo. App.1983). It is not to be construed to "stretch credulity and exalt form over substance." *State v. Toney,* 680 S.W.2d 268, 272 (Mo.App.1984). Within the amplified meaning of the applicable rule, the following have been held to constitute sufficient allegations. An allegation a defendant attempted to commit robbery by pointing a knife-like instrument at the victim and demanding money was the equivalent of threatening the use of what appeared to be a dangerous instrument. *State v. Daniels,* supra. An allegation that a defendant forcibly ravished a victim was an allegation of sexual intercourse by force and against her will. *State v. Abron,* 492 S.W.2d 387 (Mo. App.1973). An allegation that a defendant was furloughed was equivalent to permitted to go at large. *State v. McCollum,* 582 S.W.2d 330 (Mo.App.1979).

An applicable definition of "purchase" is "to obtain by paying money or its equivalent." Webster's New Collegiate Dictionary, p. 936 (1977). To obtain requires a delivery. It has been sagaciously observed, "It may be more satisfying to find the precise statutory language in informations and in instructions, but it is not essential if terms are used which convey the same meaning with clarity and precision." *State v. McCollum,* supra, at 333. The information, with clarity and precision, alleged the defendant offered money for the delivery of the child to him. Cf. *State v. O'Connell,* 726 S.W.2d 742 (Mo. banc 1987). The defendant's additional argument has no merit.

■ The defendant's fourth point is that the trial court erred in refusing to give a tendered instruction purporting to submit

an attempt to commit the offense defined by § 453.110.1 as a lesser included offense under § 568.175.1. To support this point, the defendant purports to analyze the elements of each offense and concludes the offense defined by § 453.110.1 is such a lesser included offense. The fallaciousness of his argument is demonstrated by that which he omits as an element of an offense under § 453.110.1. That element is recognized in the following language: "without ... having obtained such an order from such court approving or ordering transfer of custody." § 453.110.1. This element is not present in trafficking in children, § 568.175. The offense defined in § 453.110.1 therefore is not a lesser included offense of the offense defined by § 568.175.1. *State v. Fields,* 739 S.W.2d 700 (Mo. banc 1987).

■ The defendant's last point is that the trial court erred in admitting evidence of the defendant's statement that the only things he needed were modern electricity and tender young pussy. He argues that the prejudice from this evidence outweighs its probative value. He cites *State v. Simpson,* 718 S.W.2d 143 (Mo.App.1986).

■ The applicable principle has been succinctly stated:

> Generally, whether evidence is relevant and whether its probative value outweighs its inflammatory and prejudicial dangers are for the trial court to decide, and the trial court's decision will not be disturbed unless its discretion is abused.... A fact that tends to corroborate evidence relevant to a material issue is relevant evidence although it may not alone be probative of an ultimate fact.... Due process does not require that all relevant evidence be received into evidence, ... and a trial court has discretion to refuse highly prejudicial albeit relevant evidence.... Nevertheless, this Court has said many times that relevance, not prejudice, is the touchstone of due process.

*State v. Gibson,* 636 S.W.2d 956, 958 (Mo. banc 1982). The defendant's statement concerning his need was very relevant to establish his attempt to purchase a female child and to demonstrate the absence of entrapment. Because that statement also engenders a feeling of disgust is no bar to its admission. Further, in view of the fact the defendant admitted he intended to inspect the two-year-old female child, it is difficult to visualize how he could be prejudiced by his own statement. The trial court did not abuse its discretion in admitting evidence of that statement. The judgment is affirmed.

CROW, C.J., and FLANIGAN and GREENE, JJ., concur.

HOLSTEIN, J., not participating.

PREWITT and HOGAN, JJ., concur in part and dissent in part with opinion attached.

PREWITT, Judge, concurring in part and dissenting in part.

I would affirm the conviction for "unlawful use of weapons", § 571.030, RSMo 1986 and reverse the conviction for "Trafficking in children", § 568.175, RSMo 1986.

What defendant did was highly reprehensible but his point is correct that there was insufficient evidence to establish that he had committed the offense of trafficking in children "in that there was no evidence whatsoever that appellant offered money for the offer of delivery of a child to a person or entity other than appellant." Section 568.175.1, RSMo 1986, states:

> Trafficking in children—elements of crime—penalty.—1. A person, partnership, corporation, agency, association, institution, society or other organization commits the crime of trafficking in children if he or it offers, gives, receives or solicits any money, consideration or other thing of value for the delivery or offer of delivery of a child to another person, partnership, corporation, agency, association, institution, society or other organization for purposes of adoption, or for the execution of a consent to adopt or waiver of consent to future adoption or a consent to termination of parental rights.

Courts should follow the rule that a criminal statute must be construed liberally in favor of the defendant and strictly against the state. *State v. Treadway*, 558 S.W.2d 646, 652 (Mo. banc 1977), cert. denied, 439 U.S. 838, 99 S.Ct. 124, 58 L.Ed.2d 135 (1978), overruled on other grounds, *Sours v. State*, 593 S.W.2d 208, 210 (Mo. banc 1980), cert. denied, 449 U.S. 1131, 101 S.Ct. 953, 67 L.Ed.2d 118 (1981).

A criminal statute does not include offenses or persons other than those which are clearly described and prescribed within the spirit and letter of the statute. *State v. Kayser*, 552 S.W.2d 27, 29–30 (Mo.App. 1977). "If there is fair doubt as to whether the act charged and proved is embraced within the prohibition, that doubt will be resolved in favor of the accused." *Id.*, 552 S.W.2d at 30.

Reduced to how it may apply here, § 568.175.1, RSMo 1986, states that "A person ... commits the crime of trafficking in children if he ... gives ... any money ... for the delivery ... of a child to another person ... for purposes of adoption". "Another person" would appear to indicate someone other than the person initially mentioned in the sentence, although it could possibly be construed as being someone other than the one who had control of the child. The state so argues. Neither party cites any authority construing this statute.

Section 568.175.1 initially refers to the wrongdoer and then to "another person". Only they and the child are mentioned. The custodian of the child is not referred to. If defendant is guilty of the offense charged, the wrongdoer, and "another person" are the same.

"Another" means "additional; one more" or "Distinctly different from the first." The American Heritage Dictionary 54 (1978). 3A C.J.S. 895 (1973), defines "another" "as meaning a different or separate person or thing; a different, distinct, or separate (one) from the one considered; distinct or different; not the same; one more". See also The Random House Dictionary 85 (2d ed. 1987) (another means "one more", "additional" or "different").

Referring to "another person" being present in a building in a statute on arson means "one other than the person charged with the crime." *State v. Pellegrino*, 194 Conn. 279, 480 A.2d 537, 541 (1984).

To construe "another person" as someone other than the custodian of the child would, in effect, be adding to the statute "from its custodian", (or similar words) so that the section would read in part the "delivery of a child from its custodian to another person". The statute does not say that. As applicable here, other than the child, it mentions only two persons, the wrongdoer and "another person". It is illogical for them to be the same. If they were intended to be the same person, "another" accomplishes no purpose except to mislead.

Construing the statute against the state, we should reach the conclusion that by referring to "another person" the statute requires that this person be someone other than the one who "offers, gives, receives or solicits any money, consideration or other thing in value for the delivery or offer of delivery of a child".

This interpretation is fortified by the offense being described as "trafficking in children". "Trafficking" means "To carry on trade; have dealings." The American Heritage Dictionary 1361 (1978). See also *Curten v. Atkinson*, 36 Neb. 110, 54 N.W. 131, 133–134 (1893) ("traffic in intoxicating drinks" means selling liquor, not the use of it by the saloon keeper); *Ferrari v. Bauerle*, 519 S.W.2d 144, 147 (Tex.Civ.App. 1975) ("Traffic in" synonymous with "deal" or "deal in"). See also The Random House Dictionary 2006 (2d ed. 1987) (Traffic means "trade; buying and selling; commercial dealings").

Defendant's only point, which was not limited to the charge of trafficking in children, is his contention that the trial court erred in overruling his objection to testimony that defendant said that "the only thing

... he needed ... was modern electricity ... and tender young pussy". Whether or not that evidence was properly received need not be decided.

The evidence that defendant was guilty of an unlawful use of a weapon was substantial and included defendant's admission of the facts necessary for a conviction. "Error which in a close case might call for reversal may be disregarded as harmless where the evidence of guilt is strong." *State v. Bellew*, 586 S.W.2d 461, 464 (Mo. App.1979). The evidence questioned was not prejudicial.

HOGAN, J., concurs in the opinion of PREWITT, J.