[Cite as *State v. Hardin*, 2024-Ohio-2943.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No.    L-22-1215
                                                                                    L-22-1216
      Appellee

                                                                 Trial Court No.  CR0202102664
                                                                                           CR0202102967
v.

Shawnte Hardin                                  **DECISION AND JUDGMENT**

      Appellant                               Decided: August 2, 2024

* * * * *

Dave Yost, Ohio Attorney General, and
Brad Tammaro and Drew Wood, Assistant
Attorneys General, for appellee.

Adam M. VanHo, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from an August 5, 2022 judgment of the Lucas County Court of Common Pleas, convicting appellant of 31 felony and misdemeanor offenses, all resulting from appellant's unlawful engagement in death-related services, for which appellant lacked the required education, training, licensure, facilities, and equipment, and which caused catastrophic damage to the remains of the deceased and anguish to the families and loved ones of the deceased.

{¶ 2} At appellant's election, the right to a jury trial was waived and all cases were tried to the bench. Following his convictions, appellant was sentenced to a total term of incarceration ranging from 11 years, 10 months, to 14 years, 10 months. For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 3} Appellant, Shawnte Harden, sets forth the following three assignments of error:

ONE: APPELLANT'S [CONVICTIONS] FOR ENGAGING IN A PATTERN OF CRIMINAL ACTIVITY, TAMPERING WITH RECORDS, TELECOMMUNICATIONS FRAUD, ABUSE OF A CORPSE, AND/OR POSSESSION OF CRIMINAL TOOLS IS UNCONSTITUTIONAL AS IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS BASED ON INSUFFICIENT EVIDENCE [].

TWO: APPELLANT'S [CONVICTIONS FOR] ABUSE OF A CORPSE ARE VOID AS THE STATUTE IS UNCONSTITUTIONALLY VAGUE [].

THREE: APPELLANT'S [CONVICTIONS] FOR FAILURE TO FILE TAXES, IN VIOLATION OF SECTION 5747.19 OF THE OHIO REVISED CODE ARE VOID AS LUCAS COUNTY WAS [AN] IMPROPER VENUE [].

{¶ 4} As noted above, this case centers upon uniquely unsettling circumstances arising from appellant's widespread engagement in the unlawful provision of death-related services throughout Ohio, predominantly in Franklin,

2.

Summit, and Lucas counties. Appellant's scheme unraveled upon a succession of survivors in different regions of Ohio learning that their loved ones' remains had been fundamentally mishandled and left to decompose in varying locations. Following the discovery and investigation into these events, appellant was indicted on numerous offenses arising from these actions.

{¶ 5} Specifically, appellant routinely failed to refrigerate remains, to properly embalm and preserve remains, to properly store remains, to properly transport remains, and failed to cremate or properly dispose of remains for which cremation services had been paid by the families of the deceased. To facilitate the scheme, appellant falsely represented himself to members of the public as a qualified, licensed funeral director. He was not. In conjunction, appellant held himself out as both a Christian pastor, and separately, as a Muslim, through which he generated interest in his services from various faith-based communities.

{¶ 6} In truth, appellant once started a course at a Pennsylvania mortuary school, failed, dropped out of the program, and never obtained the required education and licensure to provide funeral services. Nevertheless, appellant fabricated multiple legitimate-sounding funeral business identities, including Celebration of Life Memorial Chapel, Hardin funeral home, Hussein funeral home, Shawnte Hardin Services LLC, and Islamic Funeral Homes. None of these businesses actually existed. Appellant is not, and never has been, a licensed funeral director, is not Islamic, never possessed a physical funeral home location,

3.

never possessed proper equipment, and never possessed a license to operate a funeral home and/or crematorium. The entirety was an artifice.

{¶ 7} To facilitate his actions, appellant would obtain different vehicles, including rental cars, and utilize transient locations, such as storage units, empty storefronts, and the like. These locations invariably lacked the necessary facilities and equipment for the performance of funeral activities, such as refrigeration units, proper embalming equipment, suitable sinks and drains, or crematoriums.

{¶ 8} Given the nature and scope of the damage caused by appellant's actions, select examples will be conveyed to provide a snapshot of the events. In one Lucas County case, appellant directed a driver to transport the body of a decedent, J.P., from the Lucas County coroner's office to a dilapidated former daycare center in Toledo. The delivery driver's suspicions of illegitimacy were triggered upon being instructed by appellant to leave the unenbalmed body on a table in a back room without refrigeration, storage, or any preservation or containment mechanism. In conjunction, the deceased had died of a highly contagious condition known as necrotizing bronchopneumonia. The potential public health implications of such circumstances are considerable.

{¶ 9} Accordingly, the concerned delivery driver immediately contacted the Lucas County Coroner's Office regarding the situation, and they then notified the Toledo Police Department. A Toledo police detective subsequently went to the site and discovered the significantly decomposed remains on the table. Given the public health concerns implicit in both the condition of the body and the cause of

4.

death, the investigating officer directed the Lucas County Coroner's Office to immediately retrieve the remains, return the remains to the coroner's office, and properly store the remains in the interim.

{¶ 10} In one of the Franklin County cases, appellant had leased a storage unit in Columbus and had begun operating an unlicensed funeral home in the storage unit. Appellant placed a table and caskets inside the storage unit and began conducting death-related services in the storage unit. Upon the facility owner discovering that appellant had an unrefrigerated, unembalmed, decomposed body in the storage unit for over two weeks, appellant was evicted from the storage facility.

{¶ 11} On September 28, 2021, following appellant's eviction from the storage facility, appellant began using the back room of a dilapidated, former nail salon on Livingston Ave., in a near downtown area of Columbus. An eyewitness reported appellant dragging bodies into the building to the Columbus Police Department. Upon their arrival, the police discovered that appellant had placed two bodies inside the building, one body was in a cardboard box, the other was under a blanket. The bodies were not properly preserved, contained, or stored. The investigating officers then discovered that appellant had driven one of the badly decomposing bodies, unrefrigerated, from Colorado to Columbus in the back of a rental car.

{¶ 12} The investigating officers observed that the mishandled bodies were exhibiting severe decomposition, discoloration, skin slippage, leakage, and

5.

malodor. The remains of the two persons were so severely deteriorated that the individuals tasked with collecting them from the former nail salon had to wear full-body personal protective equipment in order to secure the remains and transport them for proper storage.

{¶ 13} The officers further learned that appellant had charged for cremation services for one of the two decedents, and, in addition, had falsely advised the family members that she had been cremated and that her ashes were available for pickup. In reality, the uncremated, unrefrigerated, decomposing body had been left by appellant for four weeks in a cardboard box in the back of the former nail salon. As a result, the decedent's body had molded and largely decomposed.

{¶ 14} The record is replete with evidence and testimony reflecting that appellant's systematic mishandling of numerous other sets of remains resulted in severe decomposition, severe swelling, severe deformation, skin slippage, and fluid leakage of the remains of loved ones who had been placed in appellant's care.

{¶ 15} Reports of appellant's malfeasance in Toledo, Columbus, and Akron culminated in multiple criminal investigations being launched by law enforcement agencies throughout Ohio into appellant's activities.

{¶ 16} On October 14 and December 7, 2021, respectively, following the conclusion of the investigations, appellant was indicted on one count of engaging in a pattern of corrupt activity, in violation of R.C. 2923.32(A), a felony of the first degree, three counts of tampering with records, in violation of R.C. 2913.42(A),

6.

felonies of the third degree, two counts of telecommunications fraud, in violation of R.C. 2913.05, felonies of the fifth degree, two counts of identity fraud, in violation of R.C. 2913.49(B), felonies of the fifth degree, one count of operating an unlicensed funeral home, in violation of R.C. 4717.13(A), an unclassified misdemeanor, five counts of passing bad checks, in violation of R.C. 2913.11, felonies of the fifth degree, nine counts of abuse of a corpse, in violation of R.C. 2927.01, felonies of the fifth degree, nine counts of representation as a funeral director while unlicensed, in violation of R.C. 4717.13(A), unclassified misdemeanors, one count of possession of criminal tools, in violation of R.C. 2923.24, a felony of the fifth degree, one count of failure to refrigerate a human body, in violation of R.C. 4717.13(A), an unclassified misdemeanor, two counts of theft, in violation of R.C. 2913.02(A), felonies of the fifth degree, two counts of unauthorized use of a motor vehicle, in violation of R.C. 2913.03(B), felonies of the fifth degree, five counts of failure to file taxes, in violation of R.C. 5747.19, felonies of the fifth degree, and one count of intimidation, in violation of R.C. 2921.04(B), a felony of the third degree.

{¶ 17} On July 6, 2022, appellant waived the right to a jury trial and elected to proceed with a bench trial. On July 11, 2022, the trial commenced.

{¶ 18} Following trial, appellant was convicted on one count of engaging in a pattern of corrupt activity, three counts of tampering with records, two counts of telecommunications fraud, one count of operating an unlicensed funeral home, six counts of abuse of a corpse, one count of possession of criminal tools, eight counts

7.

of representation as a funeral director while unlicensed, two counts of theft, four counts of passing bad checks, and three counts of failure to file taxes. On August 31, 2022, appellant was sentenced to aggregate term of incarceration on all convictions ranging from 11 years, 10 months, to 14 years, 10 months. This appeal ensued.

{¶ 19} In the first assignment of error, appellant alleges that his convictions of engaging in a pattern of criminal activity, tampering with records, telecommunications fraud, abuse of a corpse, and possession of criminal tools were against the manifest weight of the evidence and not based upon sufficient evidence. Appellant did not appeal the balance of the convictions.

{¶ 20} The record clearly shows that extensive, unrefuted testimony was given at trial from multiple detectives with the Columbus Police Department, a Lucas County Coroner's Office detective, a Lucas County Coroner's Office mortician, the Lucas County Coroner, a Franklin County Sheriff's Department deputy, an Ohio Attorney General's Office case analyst, an Ohio Bureau of Criminal Investigation ("BCI") financial crimes special agent, and an Ohio Board of Funeral Directors inspector. The trial court then heard extensive, unrefuted testimony from numerous family members and loved ones of the deceased.

{¶ 21} Conversely, appellant presented the lay testimony of several persons claiming that appellant possessed the necessary capabilities for the performance of the death-related services underlying this case. In addition, appellant testified on his own behalf. While appellant did not dispute the essence of what had occurred,

8.

appellant unpersuasively offered the explanation that he had engaged in these actions out of a benevolent concern over the excessive cost of death-related services, offering the services at a lower cost.

{¶ 22} As held by this court in *State v. Stevens*, 2023-Ohio-343, ¶118, 131 (6th Dist.),

> When determining whether a conviction is against the manifest weight of the evidence, the appellate court must review the record, weigh the evidence and all reasonable inferences drawn from the evidence, consider the credibility of the witnesses and decide, in resolving any conflicts in the evidence, whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Prescott*, 190 Ohio App.3d 702, 2010-Ohio-6048, 943 N.E.2d 1092, ¶ 48 (6th Dist.), citing *State v, Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Fundamental to the analysis is that judgments supported by some competent, credible evidence going to the essential elements of the case will not be reversed by reviewing court as being against the manifest weight of the evidence. *State v. Gist*, 6th Dist. Lucas No. L-12-1355, 2014-Ohio-3274, ¶ 26, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus * * * The Supreme Court of Ohio has stated that the term sufficiency of the evidence presents a question of law

as to whether the evidence is legally adequate to support a jury verdict as to all elements of the crime. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a sufficiency of the evidence claim, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 23} We shall next examine and consider each of appellant's contested convictions in the order set forth by appellant upon appeal.

{¶ 24} With respect to appellant's engaging in a pattern of criminal activity conviction, R.C. 2923.32(A)(1) establishes, "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through pattern of corrupt activity or the collection of an unlawful debt."

{¶ 25} In challenging this conviction, appellant specifically argues, "*[T]he trial court did not state with specificity which, if any, of the offenses were done in furtherance of the criminal enterprise. The trial court merely made a general finding of guilt.*" (Emphasis added). Accordingly, appellant now disputes the form of the trial court's verdict. However, appellant did not assign error regarding the form of the trial court's verdict.

10.

{¶ 26} As held in *State v. Harlow*, 2014-Ohio-864, ¶ 10 (4th Dist.), Appellate courts review assignments of error - we sustain or overrule only assignments of error and not mere arguments. *See State v. Gwinn*, 196 Ohio App.3d 296, 2011-Ohio-5457, 963 N.E.2d 212, ¶ 26 (4th Dist.); *Dunina v. Stemple*, 2nd Dist. Miami No. 2007 CA 9, 2007-Ohio-4719, ¶ 4. Accordingly, we will not address the arguments that challenge [appellant's] conviction because she did not assign them as error. *See Coffman v. Mansfield Corr. Inst.*, 10th Dist. Franklin No. 09-AP-447, 2009-Ohio-5859, ¶ 18.

{¶ 27} Similarly, in the instant case, we decline to address appellant's generic challenge to the form of the engaging in a pattern of corrupt activity verdict, which was not assigned as error, and which was unaccompanied by supporting legal authority.

{¶ 28} In conjunction with the above, appellant, "[C]oncedes that the offenses of tampering with records, passing bad checks, telling communications fraud, and theft constitute predicate offenses [to engaging in a pattern of criminal activity] under [R.C.] 2923.31(I)."

{¶ 29} Lastly, we note that the general verdict, which appellant now disputes upon appeal, is mandated by Crim.R. 23(C), which establishes, "In a case tried without a jury the court shall make a general finding." In the instant case, the record shows that appellant waived the right to trial by jury, and elected to proceed with a bench trial, triggering the general form verdict requirement by his own actions.

11.

{¶ 30} Appellant's claim pertaining to the engaging in a pattern of criminal activity conviction is without merit.

{¶ 31} With respect to appellant's tampering with records convictions, R.C. 2913.42(A)(1) establishes that, "No person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall * * * falsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record."

{¶ 32} In challenging these convictions, which pertain to appellant's entry of incorrect and/or false data into Ohio's electronic death registration system ("EDRS"), appellant wholly relies upon the unsupported insinuation that other individuals with whom appellant had dealings in connection to his activities could conceivably be responsible for the entry of the incorrect and/or false data into the EDRS system. Appellant generically states that, "[O]thers had access to the same information."

{¶ 33} Contrary to this position upon appeal, the record conversely shows that at trial appellant acknowledged his entry of the data, and in further recognition of same, appellant offered the affirmative defense that the subject individuals consented to appellant's use of their passwords in order for appellant to enter the information into EDRS, a system to which appellant did not otherwise have access.

{¶ 34} Accordingly, appellant's unsupported suggestion that the very same parties whom he argued at trial were aware of, and consented to, his use of their

12.

passwords in order for appellant to enter the incorrect and/or false information into the EDRS system were actually the ones who may have entered the incorrect and/or false information is unsupported by evidence and is abrogated by appellant's admission and affirmative defense at trial.

{¶ 35} Appellant's claim pertaining to the tampering with records convictions is without merit.

{¶ 36} With respect to appellant's telecommunications fraud convictions, appellant incorporates and restates the exact arguments presented above regarding the tampering with records convictions. Therefore, on the same substantive basis as set forth above in response to the tampering with records convictions, appellant's claim pertaining to the telecommunication fraud convictions is likewise without merit.

{¶ 37} With respect to appellant's abuse of a corpse convictions, which are central to the events underpinning this case, R.C. 2927.01(B) establishes in relevant part, "*No person, except as authorized by law, shall treat a human corpse in a way that the person knows would outrage reasonable family sensibilities.*" (Emphasis added).

{¶ 38} In challenging these convictions, appellant unilaterally, summarily concludes that, "There was no evidence that appellant treated the corpses in a way that would outrage reasonable community standards."

{¶ 39} The record contains overwhelming, unrefuted evidence showing that appellant accepted monetary fees from the family members of deceased persons

13.

based upon the false representation that he was a licensed funeral home director able to perform the range of standard death-related services, such as embalming, proper body storage and refrigeration, proper body transport, cremation, and all necessary protocols related to same to properly treat and preserve human remains.

{¶ 40} In conjunction, the record encompasses corresponding overwhelming, unrefuted evidence showing that after accepting monetary fees under false pretenses, appellant failed to properly embalm the decedents, failed to refrigerate the decedents, failed to properly store the decedents, and failed to properly transport the decedents, culminating in the remains severely decomposing, severely deforming, molding, experiencing skin slippage and fluid leakage, and deteriorating to an unrecognizable physical state, contrary to the wishes of the loved ones and to the dignity of the deceased.

{¶ 41} Appellant has failed to demonstrate that no rational trier of fact could have found the elements of abuse of a corpse proven beyond a reasonable doubt or that the convictions caused a manifest miscarriage of justice. Appellant's claim regarding the abuse of a corpse convictions is without merit.

{¶ 42} With respect to appellant's possession of criminal tools conviction, R.C. 2923.24(A) establishes, in relevant part, "No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."

{¶ 43} In challenging this conviction, appellant unilaterally, summarily concludes, "[Appellee] did not demonstrate that the hearse and van [or rental cars

14.

similarly used by appellant to transport the deceased] were used for improper purposes."

{¶ 44} Appellant's cursory conclusion fails to acknowledge the wealth of evidence in the record reflecting appellant's repeated false representations of being a funeral director while knowing he was unlicensed to do so, appellant's repeated acceptance of monetary funds from the survivors of decedents to perform various death services such as embalming, proper body storage and preservation, cremation, all of which appellant lacked the licensure, facilities, and skills to do, resulting in appellant's use of various vehicles, ranging from rental trucks to lease cars, to transport numerous decedents to improper, unlawful locations, such as storage units and the back rooms of defunct businesses, where the unpreserved, unrefrigerated, exposed bodies were routinely left to fully deteriorate over lengthy periods of time. Each of the vehicles utilized by appellant when transporting the decedents facilitated the crimes against the deceased and their families.

{¶ 45} Appellant has failed to demonstrate that no rational trier of facts could have found the elements of possession of criminal tools proven beyond a reasonable doubt or that the conviction constituted a manifest miscarriage of justice. Appellant's claim pertaining to the possession of criminal tools conviction is without merit.

{¶ 46} We have reviewed and considered the record of evidence. We find that the record is devoid of any evidence demonstrative that no rational trier of fact could have found the essential elements of appellant's disputed convictions shown

15.

beyond a reasonable doubt or that the convictions created a manifest miscarriage of justice. Appellant's first assignment of error is found not well-taken.

{¶ 47} In appellant's second assignment of error, appellant argues that his abuse of a corpse convictions are void premised upon the claim that Ohio's abuse of a corpse statute, R.C. 2927.01, is unconstitutionally vague.

{¶ 48} R.C. 2927.01 establishes that, "(A) No person * * * shall treat a human corpse in a way that the person knows would outrage reasonable family sensibilities. (B) No person * * * shall treat a human corpse in a way that would outrage reasonable community sensibilities."

{¶ 49} Appellant's void for vagueness claim regarding R.C. 2927.01 has been previously presented to, and uniformly rejected by, courts throughout Ohio, including this court.

{¶ 50} In *State v. Glover*, 17 Ohio App.3d 256, (8th Dist. 1984), the Eighth District Court of Appeals flatly rejected an R.C. 2927.01 void for vagueness argument, determining that the, "[R.C. 2927.01 language can be] commonly understood by persons of common intelligence * * * *a criminal statute is not void for vagueness simply because it requires a person to conform to an imprecise but comprehensible normative standard*." (Emphasis added).

{¶ 51} Subsequently, in *State v. Gardner*, 65 Ohio App.3d 24, (6th Dist. 1989), this court likewise affirmed that R.C. 2927.01 is not unconstitutionally vague and held, "We find the reasoning in *Glover* persuasive. Based upon the foregoing, *we find that the terms of R.C. 2927.01 are sufficiently explicit so as to*

16.

*provide notice of what conduct is prohibited thereunder without requiring persons to guess as to its meaning or invoking arbitrary application.*"  (Emphasis added).

{¶ 52} In similarly rejecting R.C. 2927.01 void for vagueness arguments, in *State v. Condon*, 2003-Ohio-2335, ¶ 31 (1st Dist.), the court further elaborated and held,

> The Second and Sixth Appellate Districts, it should be pointed out, have followed the *Glover* decision.  *See State v. Hopfer* (1996), 112 Ohio App.3d 521, 557, 679 N.E.2d 321; *State v. Gardner* (1989), 65 Ohio App.3d 24, 582 N.E.2d 1014.  We are also persuaded by its reasoning.  Community mores concerning the proper treatment of a corpse are not, in our view, esoteric or otherwise difficult to discern.  Irrespective of one's religious views, and even if one is an atheist or agnostic, *it is almost universally understood that the bodies of the dead are to be treated with the utmost respect and in a manner that will not inflict any more emotional pain upon the wounded hearts of friends and mourners.  Commonwealth v. Browne* (1976), 74 Pa. D. & C. 2d 724, 730.  *Indeed, there is in human beings an ingrained sense that the dead are not to be trifled with*.
> (Emphasis added).

{¶ 53} This court reiterates its view, as previously set forth in *Gardner*, and in accord with the above, that the language of R.C. 2927.01 is not impermissibly vague.  The maltreatment of a corpse, inherently lacking in dignity and decency, offensive to family members and to the community, is grounded in an imprecise,

17.

but nonetheless comprehensible, standard. Appellant's claim that R.C. 2927.01 is unconstitutionally vague is without merit.

{¶ 54} We find appellant's second assignment of error not well-taken.

{¶ 55} In the third assignment of error, appellant argues that Lucas County was an improper venue for appellant's failure to file taxes offenses. We are not convinced.

{¶ 56} R.C. 2901.12(H) unreservedly establishes, "When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, *the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred*." (Emphasis added).

{¶ 57} In support, appellant specifically argues, "[T]here was no significant nexus between appellant's duty to file state income taxes and Lucas County * * * Appellant's duty to file income taxes derived in Franklin or Summit or Summit counties * * * which is where he resided at all times relevant." However, appellant simultaneously concedes that, "*[M]any of the [] offenses related to the funeral business could be considered continuing courses of conduct in Lucas County*." (Emphasis added).

{¶ 58} Accordingly, by appellant's own admission, the R.C. 2901.12(H) singular threshold that "one of those offenses" be connected to Lucas County in order for venue to be proper, was not only satisfied, it was exceeded.

{¶ 59} Wherefore, we find, pursuant to R.C. 2901.12(H), that Lucas County was a proper venue for all of the offenses in this case, including the tax offenses. Appellant's claim that Lucas County was not a proper venue on the failure to file taxes convictions is without merit. We find appellant's third assignment of error not well-taken.

{¶ 60} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

                                                              Judgment affirmed.


A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.                    _____
                                                        JUDGE

Christine E. Mayle, J.
CONCUR.
                                        _____
Gene A. Zmuda, J.                                   JUDGE
CONCURS IN JUDGMENT
ONLY          .                         _____
                                                        JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.